[Civ. No. 52160. Second Dist., Div. Four. Oct. 27, 1978.]

In re the Marriage of CLIFFORD ALBERT
and FRANCES ELIZABETH JOHNSTON.
CLIFFORD ALBERT JOHNSTON, Respondent, v.
FRANCES ELIZABETH JOHNSTON, Appellant;
SOUTHERN CALIFORNIA IBEW-NECA PENSION PLAN et al.,
Appellants.

902

**COUNSEL**

John E. McDermott, Patricia M. Tenoso, Robert T. Olmos, Diane S. Messer, Toby J. Rothschild, Bruce K. Miller and Neal S. Dudovitz for Appellant Wife.

Brundage, Beeson & Pappy, Brundage, Davis, Frommer & Jesinger, Richard J. Davis, Jr., Daniel M. Wyman and Dennis F. Moss for other Appellants.

No appearance for Respondent.

**OPINION**

**ALARCON, J.**—The Southern California IBEW-NECA Pension Plan, the National Electrical Benefit Fund and the International Brotherhood of Electrical Workers, (hereinafter claimants) have appealed from a judgment awarding to respondent and cross-appellant, Frances Elizabeth Johnston (hereinafter wife) one-half of the pension benefits to which respondent Clifford Albert Johnston (hereinafter husband) is entitled and requiring that claimants pay the proportionate share of wife directly to her. Claimants also appeal from that portion of the judgment denying to them an award of attorneys' fees.

Cross-appellant, wife, appeals from that portion of the same judgment which authorizes claimants to deduct from each monthly pension benefit payment the sum of $5.

Husband and wife were married on December 10, 1936. On January 17, 1974, husband filed a petition for dissolution of that marriage. The amended response to the petition filed by wife listed as assets of the marriage, inter alia, pension funds payable monthly to husband, under the control of claimants.

On May 19, 1976, on motion of wife, claimants were joined as parties to the dissolution action. Claimants filed suit in the United States District Court, seeking an injunction against the Los Angeles Superior Court to prevent it from enforcing any judgment against claimants. That action was dismissed by the federal district court on July 16, 1976.

Husband and wife entered into a stipulation concerning disposition of all of the assets of the marriage. The husband's pension benefits, the largest asset of the marriage, were stipulated to be community property. It was further stipulated that wife was to receive 50 percent of each and every payment to which husband was entitled. The issue of the obligation of claimants to pay wife's share directly to her was bifurcated for purposes of trial. Following a trial on that issue, on August 10, 1976, the

court rendered its intended decision, which included the following findings: "The court further finds that since the date of separation petitioner has received pension benefits which he failed to share with respondent and by petitioner's own testimony—the possibility exists that if necessary—petitioner would use future benefits for his own use and refuse to pay respondent's share to her. Therefore, the court finds that an order requiring claimants to pay respondent's share directly to her is 'necessary to the enforcement of the judgment.' "

On December 15, 1976, judgment on the bifurcated proceeding was entered. That judgment contained the following orders:

"Claimants IBEW-NECA Pension Plan, National Electrical Benefit Fund and International Brotherhood of Electrical Workers are each permanently enjoined to pay a portion of the monthly benefit due petitioner Clifford Albert Johnston directly to respondent Frances Elizabeth Johnston for each month that petitioner shall remain eligible for such benefits in the following manner:

"A. Claimants IBEW-NECA Pension Plan, National Electrical Benefit Fund and International Brotherhood of Electrical Workers may deduct from the combined pension benefits of petitioner Clifford Johnston a total of $5.00 to cover said claimants' excessive administrative costs of compliance with the order of this court.

"B. One-half of the balance of the remaining pension benefits after deduction of the $5.00 due to petitioner Clifford Johnston shall be paid each month by said claimants directly to respondent Frances Elizabeth Johnston.

"3. Counsel for claimants Brundage, Beeson and Pappy, . . . request for attorneys' fees in the amount of $200 is denied."

On this appeal from the judgment, claimants contend that the trial court erred in ordering direct payment to wife of one-half of husband's pension benefits for the following reasons:

A. The Employee Retirement Income Security Act of 1974 is legislation occupying the entire field of pension distribution and preempts all state action in connection therewith;

B. The trial court's order requires claimants to violate the terms of their employee benefit pension program enacted pursuant to the federal Employee Retirement Income Security Act.

Claimants further contend that the court erred in denying their request for attorneys' fees, arguing that under both California and federal law, such an award of fees is authorized.

We affirm both of the trial court's orders for the reasons set forth in this opinion.

Wife contends in her cross-appeal that the trial court erred in permitting the claimants to deduct $5 from the monthly benefits due to wife and husband, inasmuch as the record offers no support for the need for such a deduction and further no authority therefor is found in the law or the language of the benefit plans themselves. We agree and reverse that portion of the trial court's judgment authorizing the $5 monthly deduction.

DISCUSSION:

I. THE EMPLOYEE RETIREMENT INCOME SECURITY ACT DOES NOT PROHIBIT THE STATE COURT FROM ORDERING CLAIMANTS TO MAKE PENSION PAYMENTS DIRECTLY TO WIFE

The pension benefits which are the subject of the instant litigation are clearly community property. This is so not only by virtue of the stipulation of husband and wife but by settled law in California. Although some uncertainty previously existed concerning the community nature of unvested pension benefits, our Supreme Court in *In re Marriage of Brown* (1976) 15 Cal.3d 838 at page 842 [126 Cal.Rptr. 633, 544 P.2d 561], expressly resolved the problem: "Pension rights, whether or not vested, represent a property interest; to the extent that such rights derive from employment during coverture, they comprise a community asset subject to division in a dissolution proceeding."

In addition, California has long recognized the power of the court in a dissolution action to order the distributor of pension benefits to pay those benefits directly to a nonemployee spouse. (*Phillipson* v. *Board of Administration* (1970) 3 Cal.3d 32 [89 Cal.Rptr. 61, 473 P.2d 765]; *In re Marriage of Sommers* (1975) 53 Cal.App.3d 509, 515 [126 Cal.Rptr. 220];

*In re Marriage of Brown, supra,* 15 Cal.3d at p. 848; *Verner* v. *Verner* (1978) 77 Cal.App.3d 718, 725 [143 Cal.Rptr. 826].)

■ A pension plan may properly be joined as a party to a dissolution action, whenever it holds in its possession funds which constitute a community asset. (*In re Marriage of Sommers, supra,* 53 Cal.App.3d at p. 515.) In addition, the wisdom of requiring distribution of pension benefits directly to a nonemployee spouse has been acknowledged in the California courts. For example, in *Phillipson* v. *Board of Administration, supra,* 3 Cal.3d at page 43, the court stated in that connection: "An award to plaintiff of a 'property interest' which consists of no more than a right to enforce payments to her ex-husband would indeed be vacuous."

■ Further, the fact that the source of the funds sought to be disposed of in the dissolution action is federal has been deemed to present no barrier to the power of the California court to award it to either spouse. "[T]he principle that retirement benefits are community property has been held to apply whether the source of the retirement fund lies in a state, federal, military, or private employment relationship. [Citations.]" (*In re Marriage of Fithian* (1974) 10 Cal.3d 592, 596 [111 Cal.Rptr. 369, 517 P.2d 449].)

■ Appellant contends that, in spite of all of the foregoing, the Employee Retirement Income Security Act (hereinafter ERISA) deprives California courts of jurisdiction over pension plan benefits. Our research has disclosed no California cases discussing the impact of ERISA on such pension benefit distribution. Whether the preemption of state laws relating to pension plans set out in ERISA affects the kind of order made in this case, appears to be a question of first impression in California.

Our analysis is aided, however, by California cases discussing federal preemption in closely analogous areas and by cases from other jurisdictions which have considered the impact of ERISA on other state legislation. We have concluded that Congress did not intend to interfere with a state court's jurisdiction over distribution of marital property.

*The Impact of ERISA:*

ERISA was enacted by Congress in 1974. The act was adopted upon findings by the Congress that employee benefit plans had proliferated; that the plans were national in scope and affected with a national interest; that regulation, supervision and accountability to the employees was

either nonexistent or inadequate; that many plans were unsound or unstable; that there had been defaults in terminations to the detriment of employees and their beneficiaries; and that ". . . it is therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided assuring the equitable character of such plans and their financial soundness." (29 U.S.C. § 1001(a).) Congress therefore declared it public policy of the act, inter alia, to require disclosure and reporting procedures and to establish standards of conduct, responsibility, and obligations; to provide remedies and sanctions; and to protect the interests of participants and beneficiaries ". . . by improving the equitable character and the soundness of such plans . . . ." (29 U.S.C. § 1001(c).)

In order to avoid "the possibility of endless litigation over the validity of State action that might impinge on Federal regulation . . . and potentially conflicting State laws hastily contrived to deal with some particular aspect of private welfare or pension benefit plans not clearly connected to the Federal regulatory scheme," (120 Cong. Rec. 29942 (1974) Remarks of Senator Javits) Congress enacted the following preemption statute: ". . . this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to any employee benefit plan* described [herein] . . . ." (Italics added.) (29 U.S.C. § 1144.)

The issue before this court is whether Congress, by that language, intended to interfere with the distribution by a state court in a marital dissolution action of pension benefits subject to federal regulation.

*Federal Preemption of California Community Property Statutes*:

The definitions contained within ERISA make it clear that the court order in this case is a "state law" and that the pension plan involved herein is an "employee benefit plan." (29 U.S.C. § 1144(c).)

The California Supreme Court discussed the general principles which regulate an analysis of federal preemption of state regulation in *In re Marriage of Hisquierdo* (1977) 19 Cal.3d 613, at page 616 [139 Cal.Rptr. 590, 566 P.2d 224], as follows: "The principle that has emerged from these decisions is that whenever there is a conflict between a federal statute affording annuity or insurance benefits and state community property laws the federal statutes must prevail. However, if the intent of Congress in creating the federal right is not violated by application of

California's community property laws, then the status of such rights is governed by California law. [Citations.]"

A similar analysis is found in *In re Marriage of Jones* (1975) 13 Cal.3d 457 at page 461 [119 Cal.Rptr. 108, 531 P.2d 420]. There, the Supreme Court analyzed numerous federal statutes regulating the administration of military disability pay and concluded: "Congress, of course, may determine the community or separate character of a federally created benefit, and such determination binds the states. [Citations.] We find nothing in the statutes providing military disability pay, however, or in the history of the enactment and administration of those statutes, to suggest that Congress intended itself to determine whether the right of a married veteran, resident in a community property state, to disability pay is a community asset. We may therefore define the nature of the treatment to be accorded this benefit according to principles of California community property law so long as the result does not frustrate the objectives of the federal legislation. (*In re Marriage of Fithian, supra,* 10 Cal.3d 592, 597 & fn. 4.)"

Our conclusion that Congress did not intend, by the broad preemptive language of ERISA, to interfere with a state's right to control distribution of marital property, is consistent with the manner in which California courts have interpreted similar legislation. In *Phillipson* v. *Board of Administration, supra,* 3 Cal.3d at page 45 et seq., the court discussed particular Government Code sections controlling and limiting the distribution of pensions, some of which were similar to legislation contained in ERISA. Under consideration was Government Code section 21203, which provided: ". . . after a member has qualified . . . as to age and service for retirement for service, nothing shall deprive him of the right to a retirement allowance as determined under this part."

The court concluded (at p. 50): ". . . we do not believe the Legislature has declared the employee's right to a pension so sacrosanct that it is incompatible with his spouse's ownership of her community share in it."

The *Phillipson* court ordered the Public Employees Retirement System to pay over directly to the wife the share in her husband's retirement account which had been awarded to her.

We likewise conclude that nothing contained in ERISA leads necessarily to the conclusion that Congress intended to enter into this field so traditionally local.

*Preemption by ERISA of Laws not Related to Property*:

■ Claimants contend that because the judgment requiring that they pay pension benefits directly to wife is a law "relating to" an employee benefit plan, it is clearly prohibited by the ERISA preemption section. Wife, understandably, contends to the contrary. A number of federal court decisions have been rendered since the enactment of ERISA where preemption has been found to prohibit state action. For example, in *Hewlett-Packard Co.* v. *Barnes* (N.D.Cal. 1977) 425 F.Supp. 1294, a declaratory relief action was brought by California employers and managers of benefit plans. The plans concededly fell within the meaning of ERISA and were therefore subject to regulation under that act. Each was also admittedly a "health care service plan" within the meaning of article I of the Knox-Keene Act of California. The issue before the court in *Hewlett* was whether ERISA preempted Knox-Keene with respect to the administration of those plans. The court said at page 1297: "When Congress exercises a granted power in a field which states have traditionally occupied, and unmistakably evinces its intent to exclude states from exerting their police power in that field, the federal legislation may displace state law under the Supremacy Clause. See *Florida Lime and Avocado Growers, Inc.* v. *Paul,* 373 U.S. 132, 142, 146-147 . . . ; *Rice* v. *Santa Fe Elevator Corp.,* 331 U.S. 218, 229-231, . . ."

The court found that ERISA, which expressly supersedes all state laws which "relate" to any employee benefit plan, preempts the state regulation of such plans by means of the Knox-Keene Act. In reaching that conclusion, the court noted that the House version of the bill from which ERISA derives initially limited the scope of preemption to state regulation of areas expressly covered by the bill, such as reporting, disclosure, and fiduciary duties with respect to the plans. The more sweeping preemption language which was ultimately enacted was preferred, as explained by Senator Harrison Williams, Jr., Chairman of the Senate Committee on Labor and Public Welfare, for the following reason: "It should be stressed that . . . the substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans." (120 Cong. Rec. 29933 (1974).)

The *Hewlett* court thus concluded that all state regulation and administration of pension plans was intended to be preempted by this legislation. To the same effect, see *Wayne Chemical* v. *Columbus Agency*

*Service Corp.* (N.D.Ind. 1977) 426 F.Supp. 316, modified and affirmed in 567 F.2d 692, 698; *Standard Oil Co. of California* v. *Agsalud* (N.D.Cal. 1977) 442 F.Supp. 695; and *Azzaro* v. *Harnett* (S.D.N.Y. 1976) 414 F.Supp. 473.

It appears clear that where the legislation or judicial order in question affects the administration or regulation of a pension plan, such order is prohibited. However, the order in the instant case only affects distribution of the pension benefits after a right thereto has been established under federal law.

The report of the House Education and Labor Committee concerning intended preemption under ERISA states: "Except where plans are not subject to this Act and in certain other enumerated circumstances, state law is preempted. Because of the interstate character of employee benefit plans, *the Committee believes it essential to provide for a uniform source of law in the areas of vesting, funding, insurance and portability standards, for evaluation of fiduciary conduct, and for creating a single reporting and disclosure system in lieu of burdensome multiple reports.*" (1974 U.S. Code Cong. & Admin. News, p. 4655.) (Italics added.)

*Effect of ERISA on California Community Property Law:*

We are persuaded that the characterization of pension benefits in California as community property and the order to the plan to pay a portion of those benefits directly to the nonemployee spouse do not in any way frustrate the congressional plan embodied in ERISA in general or in the preemption section in particular.

The laws relating to marital dissolution are uniquely local in nature. "The whole subject of the domestic relations of husband and wife . . . belongs to the laws of the States and not to the laws of the United States." (*In re Burrus* (1890) 136 U.S. 586, 593-594 [34 L.Ed. 500, 503, 10 S.Ct. 850].) "Domestic relations is a field peculiarly suited to state regulation and control, and peculiarly unsuited to control by federal courts." (*Buechold* v. *Ortiz* (9th Cir. 1968) 401 F.2d 371, 373.) In *In re Marriage of Pardee* (C.D.Cal. 1976) 408 F.Supp. 666, a dissolution action was brought in California. Wife sought to join a pension plan as a party and the plan filed a petition to remove the case to federal court. In ruling on the propriety of federal jurisdiction, the court noted that it was the position of the petitioner that ERISA superseded all state laws relating to employee benefit plans and that the state court thus had no jurisdiction to order payment. The court said (at p. 669): "Whether the community

property laws are such laws is not stated in the Act. If they are determined to be such, the federal judiciary will have been granted a roving commission to delineate family property law with little assistance from the Congress as to how to proceed. Hopefully Congress did not intend that the members of the federal judiciary begin ad hoc to create a body of federal common law in an area so traditionally the preserve of the states." The court notes at footnote 4 on that page: "The legislative history suggests that the congressional interest in uniformity was confined to matters involving the minimum standards of pension plans and the safeguards necessary to secure equitable administration. . . . An intent to regulate pension plans does not necessarily include an intent to control the state's distribution of family assets in divorce and separation proceedings."

The *Pardee* court ordered that the matter be remanded to the state court.

The United States District Court for the Northern District of California recently resolved the precise issue before this court. In *Stone* v. *Stone* (N.D.Cal. 1978) 450 F.Supp. 919, the court considered whether a state divorce decree requiring the pension plans to pay directly to wife a portion of the pension benefits due husband was invalid because preempted by ERISA. The *Stone* court first observed at page 924 that: "Congress does not infringe *sub silentio* 'the power to make rules to establish, protect, and strengthen family life [which] is committed by the Constitution of the United States . . . to the Legislature of [each state.]' *Labine* v. *Vincent,* 401 U.S. 532, 538 . . . (1971)."

Reviewing the preemption clause of ERISA, the court noted that the sections were certainly intended to have broad preemptive effect. However, they were intended to affect only laws *relating to* employee benefit plans and not to preempt any state law with only a tangential relationship to ERISA. The *Stone* court reviewed cases where ERISA has been held to preempt state legislation, such as, *Standard Oil Co. of California* v. *Agsalud, supra,* 442 F.Supp. 695. The court observed that where local legislation which regulates pension or health plans has been deemed preempted, the intended beneficiaries suffer no loss, because of the parallel protection provided them by ERISA. The court notes, however, "The intended beneficiaries of the California community property laws would be placed at a significantly greater disadvantage by preemption. Preemption would deprive nonemployee spouses of the share in marital assets which they indirectly helped to acquire, and it

would leave them without effective remedies against their husbands, . . . It is more reasonable to believe that Congress was willing to tolerate the adverse consequences of preemption of state health insurance laws than the consequences of preemption of state community property laws. [¶] For these reasons, California's community property laws do not relate to employee benefit plans within the meaning of section 514(a)." (*Stone* v. *Stone, supra,* 450 F.Supp. at p. 933.)

██ ██ We conclude that the preemption clause of ERISA does not affect the operation of California community property laws; that ERISA does not interfere with the power of California courts to divide pension benefits between a husband and wife and to order direct payments of those benefits to a nonemployee spouse; that California community property law does not relate to and is thus not included in federal regulation of any pension benefit plan.

II. THE ORDER FOR PAYMENT OF PENSION BENEFITS DIRECTLY TO WIFE IS NOT AN ASSIGNMENT OR ALIENATION OF THOSE BENEFITS

██ Section 206(d) of ERISA provides: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

Claimants contend that the court order requiring direct payment to the spouse is an order of assignment or alienation and is thus an order which requires that claimants violate federal law. This contention is not well taken.

California law has long recognized that the claim of a spouse to her share of community property is not a claim requiring transfer or assignment of property, but is an assertion of a right of ownership. In *Phillipson* v. *Board of Administration, supra,* 3 Cal.3d 32, the court held that the award of a portion of husband's retirement fund to the nonemployee spouse did not violate the prohibition against assignment of pension rights found in Government Code section 21201, which provided in part: "[T]he right of a person to any benefit or other right under this part and the money in the Retirement Fund is not subject to execution, garnishment, attachment, or any other process whatsoever and are [*sic*] unassignable." The *Phillipson* court held (at p. 44): "Plaintiff, however, claims not as a creditor, but as an owner with a 'present, existing, and equal interest.' [Citations.] The recognition of an ownership claim cannot be described as a levy of execution, garnishment, attachment or assign-

ment of property." (To the same effect, see *Verner* v. *Verner, supra,* 77 Cal.App.3d 718, 725; *In re Marriage of Hisquierdo, supra,* 19 Cal.3d 613, 616.)[1]

The order of the court complained of herein did not require an assignment or alienation of the employee's benefits.[2] The order affirmed the nonemployee spouse's existing property interest. The distribution of that interest directly to the nonemployee spouse, therefore, will represent no violation of federal law.

### III. THE TRIAL COURT DID NOT ERR IN DENYING THE CLAIMANTS' REQUEST FOR ATTORNEYS' FEES

Claimants contend that the attorneys' fees requested herein could have been awarded under either California or federal law. Claimants correctly point out that California Civil Code section 4370 provides for the award of attorneys' fees in dissolution actions, and argues that claimants as a party to the dissolution action are included in the persons entitled to such an award.

Claimants also cite section 502(g) of ERISA found at 29 United States Code section 1132(g) which authorizes the award of reasonable attorneys' fees in any action brought under the act.

However, the language of both sections previously referred to is discretionary, not mandatory. Section 4370 of the California Civil Code provides that the court *may* order reasonable attorneys' fees for the prosecution or defense of a dissolution action.

29 United States Code section 1132(g) provides that the court in its discretion *may* allow reasonable attorneys' fees to either party.

[1]The case of *Francis* v. *United Technologies Corporation* (U.S. Dist. Court, N.D. Cal., No. C77-1504 CFP) cited to us by claimants, is not persuasive. In *Francis,* the trial judge disagreed with the holding of his colleague in *Stone* v. *Stone, supra,* 450 F.Supp. 919, and found that the assertion of a nonemployee spouse's community property interest in a retirement plan would require an assignment of benefits, prohibited by ERISA. For the reasons stated in this opinion, we do not agree with that conclusion. We find that the reasoning of *Stone* is in keeping with California's interpretation of community property legislation and federal preemption thereof.

[2]This same conclusion was recently reached by the United States District Court for the Southern District of New York in *Cartledge* v. *Miller* (S.D.N.Y. 1978) 457 F.Supp. 1146 (B.N.A. Pension Reporter, 9/18/78, at p. D-5) and by the United States District Court for the Eastern District of New York in *Cody* v. *Riecker* (E.D.N.Y. 1978) 454 F.Supp. 22.

We need not decide whether claimants, as parties joined in a dissolution action on motion of one of the spouses, could be awarded attorneys' fees under California Civil Code section 4370, because nothing in the record demonstrates that the trial judge abused his discretion under either statute in denying the attorneys' fees requested by claimants. The exercise of discretion was, therefore, a proper one, and the court's order will not be disturbed on appeal.

## IV. THE TRIAL COURT ERRED IN PERMITTING THE CLAIMANTS TO DEDUCT FIVE DOLLARS PER MONTH FROM THE SPOUSES' BENEFIT PAYMENTS

On August 10, 1976, the court issued a minute order setting forth its findings and intended decision. Included therein was the following: "This court is further of the opinion that to require claimants to pay a portion of the pension benefit directly to respondent would not infringe or interfere with Congress' intent to devise a comprehensive Federal regulatory program to supervise, protect and guarantee retirement benefits and/or to regulate and protect employees benefit plans. Such an order will not affect the supervision, protection, and/or guarantee of retirement benefits, nor will it affect the regulation and/or protection of employee retirement benefits. [¶] If some additional burden is placed upon the trustees of the Pension Fund, such as issuing two checks and the giving of notice to Respondent, if required, the evidence before the Court does not establish such an undue burden as would interfere with the general purposes of the Act and/or the intent of Congress." The court concluded: "It is therefore the intention of the Court to order claimant to pay directly to Respondent each month one half of the pension benefits due petitioner."

Thereafter, on November 16, 1976, claimants filed a proposed judgment, which included an order that claimants deduct the sum of $5 per month from the portion of the pension benefits payable to wife. The court judgment, filed December 15, 1976, ordered the $5 deduction, but required that it be deducted from the total monthly payment due the Johnstons, and that the balance remaining after that deduction be divided equally between the parties.

We have concluded that the court erred in authorizing the $5 deduction from the payments. The record on appeal does not reflect that any evidence was introduced in support of claimants' contention that greatly increased administrative costs will result from the court order requiring

two payments per month. In addition, the trial court's express finding that the order of payment to the nonemployee spouse would not affect the supervision, protection, regulation, or guarantee of employee retirement benefits, and the finding that if some additional burden were placed on the claimants, the evidence did not establish such an undue burden as would interfere with the general purposes of the act, would appear to support the conclusion that no excess administrative costs had been demonstrated to the court.

The record, therefore, does not provide factual support for the order.

In addition, we do not find in any portion of ERISA, and claimants have not pointed out, authorization for such deduction. A reading of the overall act leads to the conclusion that Congress intended that the expenses of administration be spread out among, and borne equally by, all participants in the plan. We are aware of no authorization for the imposition of particular administrative costs against individual participants or beneficiaries.

Therefore, there being no factual support in the record, nor authority in the law, for the deduction of administrative costs from the Johnstons' pension benefits, the court's order authorizing such deductions was in error.

That portion of the judgment ordering direct payment to wife by claimants of one-half of the pension benefits payable to husband each month is affirmed. That portion of the judgment denying claimants' request for attorneys' fees is affirmed. That portion of the judgment authorizing the deduction of $5 per month from the Johnstons' pension plan benefits is reversed. In all other respects, the judgment is affirmed. Each party is to bear its own costs on appeal.

Files, P. J., and Kingsley, J., concurred.

The petition of the claimants and appellants for a hearing by the Supreme Court was denied December 20, 1978.