Opinion
 

 KAUS, P. J.
 

 The purpose of this action is to dissolve the 37-year marriage of James and Marian Bastian. Marian filed a “First Amended Complaint to Join Party Having Control of Community Property.” The first amended complaint alleged that the trustee of the Boilermaker-Blacksmith National Pension Trust (the Trust) had control of community funds—James’ pension—belonging in part to Marian; a copy of the first amended complaint and summons was served upon the administrator of the Trust in Kansas City, Kansas. The Trust then made a special appearance for the purpose of making two motions: (1) a motion to dismiss the complaint based on the doctrine of forum non conveniens, and (2) a motion to quash service of the summons based upon the claims that the court lacked personal jurisdiction over the Trust and that certain issues relating to the division of the pension funds it holds in trust have been preempted by the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1000 et seq.), known as “ERISA.”
 
 [1]
 

 
 *486
 
 The sole evidence before the court was an affidavit of T. Lusk Wands, administrator of the Trust, attached to which were copies of the subject pension plan and the rules and regulations of the plan. Wands stated that the Trust was a tax exempt organization which “conducts no business in California and has no office in California.” However, 196 employers in California make contributions to the Trust, approximately 2,500 pension checks are mailed by the Trust to California residents each month, and approximately 6,393 California employees are “potential trust beneficiaries.” James Bastían qualified for a pension under the Trust on July 1, 1975, and was receiving a monthly check for $302.28.
 

 The court granted both the motion to dismiss and the motion to quash service and this appeal by Marian followed.
 

 Discussion
 

 1. Federal Preemption.
 

 In the court below, Marian requested joinder of the Trust “so that jurisdiction may be obtained so that sufficient orders may be made to direct distribution and control of all community property assets which is [sic] in the possession and control of said Trustee.” The Trust responded, both here and below, with a sophisticated argument by which it has attempted to demonstrate that any order which required it to distribute the proceeds of the pension to both James and Marian—that is, to write and send one check to Marian and one to James—would improperly interfere with the purposes of ERISA. At all times, however, the Trust has made it clear that it would have no objection if the court were simply to order James, upon receipt of his monthly check, to remit Marian’s community interest in the pension to her or, alternatively, to appoint a receiver to accomplish the distribution between the spouses.
 

 In view of the fact that the court below has not yet determined a method of distribution, the Trust’s objections are premature. The court may well formulate a remedy which the Trust will find totally acceptable. We note, however, that at least one court has made it clear that even the method of distribution which the Trust deems unacceptable does not improperly interfere with ERISA: “In this day of computer technology, the burden on the fund to make out two checks and envelopes, rather than one, is insignificant.”
 
 (Johns
 
 v.
 
 Retirement Fund Trust
 
 (1978) 85 Cal.App.3d 511, 512 [149 Cal.Rptr. 551]; cf.,
 
 In re Marriage of Johnston
 
 
 *487
 
 (1978) 85 Cal.App.3d 900 [149 Cal.Rptr. 798];
 
 In re Marriage of Campa
 
 (1979) 89 Cal.App.3d 113 [152 Cal.Rptr. 362].)
 

 2. Personal Jurisdiction.
 

 An alternative ground for the granting of the motion to quash was the Trust’s contention that the court lacked personal jurisdiction over it. By statute, the power of the courts of California to exercise personal jurisdiction is as broad as is permitted by the Constitution. (Code Civ. Proc., § 410.10.)
 

 The fountainhead of modern constitutional doctrine respecting the power of state courts to exercise personal jurisdiction over nonresidents is
 
 Internat. Shoe Co.
 
 v.
 
 Washington
 
 (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057]. (3) Although it had long been recognized that “[t]he authority of every tribunal is necessarily restricted by the territorial limits of the State in which it is established . . .”
 
 (Pennoyer
 
 v.
 
 Neff
 
 (1878) 95 U.S. 714, 720 [24 L.Ed. 565, 568]), the Supreme Court in
 
 International Shoe
 
 announced that in determining the ambit of a state’s power to exercise jurisdiction over a nonresident the proper focus was upon the “nature and quality” of the nonresident’s “contacts” with the forum state.
 
 (Internat. Shoe Co.
 
 v.
 
 Washington, supra,
 
 326 U.S. at pp. 317, 319 [90 L.Ed. at pp. 102, 104].) “Thus, the relationship among the defendant, the forum, and the litigation- rather than the mutually exclusive sovereignty of the States on which the rules of
 
 Pennoyer
 
 rest, became the central concern of the inquiry into personal jurisdiction. [Fn. omitted.]”
 
 (,Shaffer
 
 v.
 
 Heitner
 
 (1977) 433 U.S. 186, 204 [53 L.Ed. 683, 698, 97 S.Ct. 2569].) This mode of analysis—exercised in conformity with “traditional notions of fair play and substantial justice”
 
 (Milliken
 
 v.
 
 Meyer
 
 (1940) 311 U.S. 457, 463 [85 L.Ed. 278, 283, 61 S.Ct. 339, 132 A.L.R. 1357])—has been consistently invoked to determine the constitutional boundaries of personal jurisdiction in a wide variety of contexts, including the area of family law. (See
 
 Kulko
 
 v.
 
 California Superior Court
 
 (1978) 436 U.S. 84, 92 [56 L.Ed.2d 132, 141, 98 S.Ct. 1690].)
 

 Applied to the facts here, the standards of
 
 International Shoe
 
 and its issue clearly establish the existence of personal jurisdiction over the Trust. Although the Trust characterizes itself as merely a “depository and disbursing agent” whose only office is in Kansas City, Kansas, it is evident that it is much more than that. The Trust provides retirement and disability pensions for thousands of California employees. These impor
 
 *488
 
 tant benefits, which have been procured by the collective bargaining activities of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, are financed primarily by the contributions of 196 California employers. Thus with the local unions presumably acting as its agents, the Trust has injected itself into the financial lives of thousands of California families, providing essential benefits to those most in need—the retired and disabled. The Trust is virtually indistinguishable from the nonprofit Nebraska insurance company which the Supreme Court found to be amenable to the personal jurisdiction of the courts of Virginia in
 
 Travelers Health Assn.
 
 v.
 
 Virginia
 
 '(¡950) 339 U.S. 643, 648-649 [94 L.Ed. 1154, 1161-1162, 70 S.Ct. 927], As in that case, it would indeed be anomalous if the beneficiaries in this state were put to the extreme hardship of traveling half way across the continent to have their rights adjudicated. (See also
 
 McGee
 
 v.
 
 International Life Ins. Co.
 
 (1957) 355 U.S. 220, 223-224 [2 L.Ed.2d 223, 226-227, 78 S.Ct. 199].) “Traditional notions of fair play and substantial justice” suggest that since the Trust, by its own actions and those of its parent union, has assumed control of a significant portion of the community assets of a substantial number of California residents, it is amenable to the personal jurisdiction of a California court which is seeking to adjudicate the respective interests of two of those residents upon dissolution of their marriage.
 

 The Trust’s authorities are easily distinguished. It likens itself to the out-of-state purchasers of California goods and services which were held not to be subject to California in personam jurisdiction in
 
 Belmont Industries, Inc.
 
 v.
 
 Superior Court
 
 (1973) 31 Cal.App.3d 281 [107 Cal.Rptr. 237] and
 
 Cornell University Medical College
 
 v.
 
 Superior Court
 
 (1974) 38 Cal.App.3d 311 [113 Cal.Rptr. 291]. However, the parties seeking to quash service in those cases were essentially nonresident purchasers whose only contact with California was that they ordered goods or services from this state. By contrast, the Trust has an on-going economic relationship with thousands of California employees and more than a hundred California employers which came about through the collective bargaining activities of its parent union within this state. These facts provide a clear basis for personal jurisdiction in the instant case.
 

 3. Forum Non Conveniens.
 

 The propriety of the court’s granting the motion to dismiss on the ground of inconvenient forum deserves little comment. There can be no question that in balancing interests to determine which of the two
 
 *489
 
 forums—California or Kansas—is the more convenient for the trial of this action, California prevails. Kansas has no power to adjudicate the dissolution of the marriage of these California residents. Were the issue in which the Trust is involved to be tried in Kansas, it would have to be severed from the basic dissolution proceeding—a major inconvenience which dwarfs any conceivable benefit the Trust might derive from the proximity of a Kansas courthouse. This is not a case where the record indicates that the Trust will have to call a number or any local witnesses. The nature and extent of the community assets which it controls do not appear to be in dispute and the question of the mechanics of paying the pension presents a pure question of law. California is the proper forum.
 

 The order granting the motions to quash and to dismiss is reversed.
 

 Stephens, J., and Ashby, J., concurred.
 

 [1]
 

 The Trust does not claim that the pension is not a community asset. We had some doubts on that score and inquired by letter. We quote from the Trust’s reply: “The community character of Mr. Bastian’s pension rights in the res of the Trust have never been an issue in this litigation either at the trial level or on appeal. Respondent has moved on the assumption that all or some significant portion of the pension is community.”