[No. A019310. First Dist., Div. One. Jan. 17, 1985.]

In re the Marriage of ZEDA and POWELL R. WILLIAMS.
ZEDA WILLIAMS, Respondent, v.
POWELL R. WILLIAMS, Respondent;
PENSION TRUST FUND FOR OPERATING ENGINEERS, Appellant.

754

COUNSEL

Johnson & Stanton, Stanton & Kay, Thomas E. Stanton, Jr., Van Bourg, Allen, Weinberg & Roger and P. H. McCarthy, Jr., for Appellant.

Richard C. Burton for Respondent Wife.

No appearance for Respondent Husband.

OPINION

NEWSOM, J.—An interlocutory judgment of dissolution was entered on November 9, 1979, which ordered Powell R. Williams (the responding party below and hereafter Powell) to pay respondent spousal support in the amount of $800 per month and $750 in attorney's fees. Powell made none of the ordered payments, and on December 17, 1980, respondent obtained an order to show cause re contempt. After a hearing, the court dismissed the contempt proceeding against Powell and terminated the spousal support order. A judgment was subsequently entered declaring that Powell owed arrearages to respondent in the amount of $12,750.

Powell is a participant in an employee benefit plan maintained by the Pension Trust Fund for Operating Engineers (hereafter appellant or the fund), having retired on a disability pension effective September 1, 1971. He currently receives $292.50 per month in disability benefits.

To satisfy the judgment for arrearages, respondent applied for and was granted three consecutive writs of execution to be served upon appellant, seeking to garnish all pension benefits owed to respondent as of the date of service. All notices were returned unsatisfied.

On May 12, 1982, respondent obtained an order to show cause directing appellant to appear and show cause why it should not be required to comply with the writs of execution. Appellant respondent on July 1, 1982, claiming lack of jurisdiction in the state court resulting from the preemption and antialienation provisions of the federal Employee Retirement Income Security Act (hereafter ERISA). (29 U.S.C. § 1001 et seq.)

The court filed an order directing the fund to "comply with the several writs of execution in their full amounts." This appeal challenges the jurisdiction of the trial court to order disbursal of the fund benefits to respondent.

■ Appellant makes a two-pronged attack on the judgment of the trial court, the first of which is that respondent's failure to join the fund as a party pursuant to Civil Code section 4351 et seq. renders the judgment void for lack of jurisdiction.[1]

As relevant here, section 4351 provides: "In proceedings under this part, the superior court has jurisdiction to inquire into and render such judgments and make such orders as are appropriate concerning the status of the mar-

---

[1]All further statutory references are to the Civil Code unless otherwise indicated.

riage, the custody and support of minor children of the marriage, the support of either party, the settlement of the property rights of the parties and the award of attorneys' fees and costs; provided, however, no such order or judgment shall be enforceable against an employee pension benefit plan unless the plan has been joined as a party to the proceeding." Section 4363 adds that "an employee pension benefit plan shall be joined as a party to a proceeding under this part only in accordance with the provisions of Section 4363.1." Section 4363.1 sets forth the procedure for joining an employee pension benefit, and section 4363.2 delineates law applicable to proceedings "in which an employee pension benefit plan has been joined as a party."

Respondent concedes that the fund was not joined as a party in accordance with section 4363.1, but submits that "[t]hese proceedings did not effect [*sic*] any of the rights of the parties delineated by section 4351," making joinder unnecessary. Respondent characterizes the fund as "simply a garnishee under Code of Civil Procedure section 682 et seq."

There can be no question as to the trial court's authority to adjudicate respondent's rights vis-à-vis appellant if the fund was properly before the court. (*Verner* v. *Verner* (1978) 77 Cal.App.3d 718, 725 [143 Cal.Rptr. 826].) At the same time, section 4351 *mandates* joinder of an employee pension benefit plan in accordance with section 4363.1 and rule 1256 of the California Rules of Court "*in proceedings under*" part 5 of division 4 of the Civil Code (the Family Law Act). (Goddard, Cal. Family Law Practice (3d ed. 1981) § 61, p. 183.) ■ A judgment or order in a dissolution proceeding can only be enforced against a pension plan if the plan has been joined as a party. (*In re Marriage of Campa* (1979) 89 Cal.App.3d 113, 129 [152 Cal.Rptr. 362].) And according to section 4363.1, once proper application for joinder has been made, "the clerk shall enter an order joining as a party to the proceeding any employee pension benefit plan in which either party to the proceeding *claims* an *interest* which is or may be *subject to disposition* by the court." (Italics added.) ■ Thus, the crucial inquiry in the case at bench is whether respondent's writs of execution seeking to garnish Powell's disability pension benefits are "proceeding(s) under" part 5 whereby she claims "an interest which is or may be subject to disposition by the court."

Section 4351 specifically includes within family law proceedings all matters "concerning . . . the support of either party . . . ." Rule 1217 of the California Rules of Court further directs that, "[t]he court has jurisdiction of the parties and control of all *subsequent proceedings* from the time of service of the summons and a copy of the petition." (Italics added.) Finally, the Family Law Act describes the methods available for enforcement of support orders in section 4380, which provides: "Any judgment, order, or

decree of the court made or entered pursuant to this part may be enforced by the court by *execution,* the appointment of a receiver, contempt, or by such other order or orders as the court in its discretion may from time to time deem necessary." (Italics added.) Section 4383 enumerates a streamlined procedure for enforcement of support orders by writ of execution.[2]

In our view, these provisions contemplate that enforcement of support orders by writ of execution constitutes a *proceeding under* the Family Law Act. (See *In re Marriage of Lackey* (1983) 143 Cal.App.3d 698, 702 [191 Cal.Rptr. 309].) An action to determine arrearages and enforce a spousal support order by writ of execution is not an independent proceeding; rather, it rests upon an existing order rendered in a family law action. (*Id.,* at pp. 702, 704.) Hence, we conclude that a writ of execution used to enforce a spousal support order, such as that brought by respondent, must be considered a proceeding under the Family Law Act—rather than an independent action under Code of Civil Procedure section 682 et seq.—triggering the joinder requirements of section 4351.

Requiring a party to join an employee pension benefit plan prior to filing a writ of execution against it to satisfy spousal support arrearages also serves the purposes of sections 4351 and 4363.1. The joinder provisions were plainly intended to protect the interests of employee pension benefit plans, such as the fund, by providing prior notice and opportunity to be heard in any family law proceeding which might result in payment of benefits to the spouse of the covered employee. We accordingly hold that before writs of execution are granted garnishing employee pension benefit plan monies or credits to satisfy spousal support, or other obligations ordered as part of a judgment rendered pursuant to the Family Law Act, joinder of such plan pursuant to section 4363.1 is required. ▪ Respondent's failure to properly join the fund contravened section 4351.

After being served with the writs, however, the fund appeared at the hearing and failed to contest respondent's lack of compliance with the ju-

---

[2]Section 4383 states: "(a) Notwithstanding Section 4380, a judgment, order, or decree for the payment of child or spousal support may be enforced by a writ of execution without prior court approval for amounts that are not more than 10 years overdue on the date of the application for the writ.

"(b) The application for a writ of execution shall be accompanied by an affidavit stating the total amount due and unpaid that is not more than 10 years overdue on the date of the application. If interest on the overdue installments is sought, the affidavit shall state the total amount of the interest and the amount of each due and unpaid installment and the date it became due. The affidavit shall be filed in the action and a copy shall be attached to the writ of execution delivered to the levying officer. The levying officer shall serve the copy of the affidavit on the judgment debtor when the writ of execution is first served on the judgment debtor pursuant to a levy under the writ." This section was not effective until July of 1983—after the trial of this action—but we consider it indicative of the legislative intent to treat a writ of execution action as part of the family law procedure.

risdictional requirements of sections 4351 and 4363.1. In essence, we find that the fund argued the merits of the case by contending that (1) federal law and the trust agreement provisions bar the state court from asserting jurisdiction to order garnishment of any fund benefits, and (2) a portion of such benefits are immune from garnishment under federal and state law. Appellant thus made a general appearance, thereby submitting itself to the jurisdiction of the trial court and waiving any claim of lack of proper joinder. (*Raps* v. *Raps* (1942) 20 Cal.2d 382, 385 [125 P.2d 826]; *Brown* v. *Douglas Aircraft Co.* (1958) 166 Cal.App.2d 232, 236 [333 P.2d 59].)

■ Appellant next complains that the disability pension benefits of the fund are beyond the reach of respondent to satisfy the obligation owed by Powell for spousal support. In support of this contention, appellant relies upon the provisions of the trust agreement establishing the fund, which in turn are based upon federal law.

Article II, section 6 of the trust agreement, incorporated into 9.13 of the pension plan, includes the following "antialienation" provision:

"Section 6. Each Covered Employee, Retired Employee or beneficiary under this Pension Plan is hereby restrained from selling, transferring, anticipating, assigning, alienating, hypothecating or otherwise disposing of his pension, prospective pension or any other right or interest under the Plan, and the Board of Trustees shall not recognize, or be required to recognize, any such sale, transfer, anticipation, assignment, alienation, hypothecation or other disposition. *Any such pension, prospective pension, right or interest shall not be subject in any manner to voluntary transfer or transfer by operation of law or otherwise, and shall be exempt from the claims of creditors or other claimants and from all orders, decrees, garnishments, executions or other legal or equitable process or proceedings to the fullest extent permissible by law.* The rights of a spouse of any Covered Employee or Retired Employee shall be limited to a community property share of the pension actually received by a Retired Employee, after such receipt, and to rights as the designated beneficiary of a Covered Employee or Retired Employee or other rights specifically provided in the Pension Plan, and *no pension, prospective pension, right or interest of a Covered Employee or Retired Employee shall be subject to any order, decree, execution or other legal or equitable process or proceeding for the benefit of such spouse directed to the Fund.*" Such provision was included in the agreement pursuant to section 206(d)(1) of ERISA, which directs that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." (29 U.S.C. § 1056(d)(1).)

ERISA also contains a preemption section which declares that "this chapter shall supersede any and all state laws insofar as they now or hereafter

*relate to* any employee benefit plan described [herein] . . . ." (Italics added.) (29 U.S.C. § 1144(a).) Appellant submits that the antialienation provisions contained in the trust agreement and federal law, the latter of which preempts state domestic relations law, preclude execution upon Powell's benefits by respondent to satisfy past due spousal support obligations.

California appellate decisions have uniformly declared that state community property laws are not preempted by ERISA, and have upheld the jurisdiction of state courts to order payment of pension benefits to a former spouse as part of a distribution of community property. (See *In re Marriage of Fithian* (1974) 10 Cal.3d 592, 596-597 [111 Cal.Rptr. 369, 517 P.2d 449], overruled on another point in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]; *In re Marriage of Campa, supra,* 89 Cal.App.3d 113, 124-125; *In re Marriage of Johnston* (1978) 85 Cal.App.3d 900, 911-913 [149 Cal.Rptr. 798]; *Johns* v. *Retirement Fund Trust* (1978) 85 Cal.App.3d 511, 513 [149 Cal.Rptr. 551].) In the seminal case of *In re Marriage of Campa, supra,* the court focused upon the purpose of ERISA in refusing to give preemptive effect to federal law, including the antialienation provision of section 206(d)(1). Noting that the basic purpose of ERISA is to protect both employees and their families " '. . . who depend on benefits from private pension plans for financial independence after retirement. . . .' " (*id.,* at p. 125), the court concluded: "It would be ironic indeed if a provision designed in part to ensure that an employee spouse would be able to meet his obligations to family after retirement were interpreted to permit him to evade them with impunity after divorce. Construing § 206(d)(1) to prevent a nonemployee spouse from enforcing marital property obligations against an employee benefit plan covered by ERISA would frustrate rather than further the policies of that provision." (*Id.,* at p. 126.) The court added: "To ask a pension plan to send two monthly checks instead of one does not interfere with any of the Congressional objectives. It is, in fact, consonant with the objective of assuring that the members of the family receive the pension which they anticipated. We cannot find in ERISA or its extensive legislative history an unmistakable ordaining of 'clear and manifest purpose' to prevent states from achieving this simple and sensible aim in their domestic relations proceedings."[3] (*Id.,* at p. 124; see also *In re Marriage of Mantor* (1980) 104 Cal.App.3d 981, 985 [164 Cal.Rptr. 121].)

In *In re Marriage of Johnston, supra,* 85 Cal.App.3d 900, the court, quoting from *In re Marriage of Hisquierdo* (1977) 19 Cal.3d 613, 616 [139

---

[3]The United States Supreme Court dismissed the *Campa* appeal for want of a substantial federal question, which constitutes a decision on the merits and fully binds all lower courts. (*Hicks* v. *Miranda* (1975) 422 U.S. 332, 344 [45 L.Ed.2d 223, 236, 95 S.Ct. 2281]; *Carpenters Pension Trust, etc.* v. *Kronschnabel* (9th Cir. 1980) 632 F.2d 745, 748.)

Cal.Rptr. 590, 566 P.2d 224], reasoned from the basic premise that "'. . . if the intent of Congress in creating a federal right is not violated by application of California's community property laws, then the status of such rights is governed by California law. [Citations.]'" (*Id.*, at pp. 907-908.) After reviewing the impact and objectives of ERISA, the court concluded that "Congress did not intend, by the broad preemptive language of ERISA, to interfere with a state's right to control distribution of marital property . . . ." (*Id.*, at p. 908.) And recognizing the uniquely local nature of domestic relations law, the court decided that California's community property laws do not "relate to" employee pension benefit plans within the meaning of 29 United States Code section 1144(a). (*Id.*, at pp. 909-912; see also *Stone* v. *Stone* (N.D.Cal. 1978) 450 F.Supp. 919, 933.) The court found that California domestic law affects merely the distribution of pension benefits after a right thereto has been established under federal law, rather than the administration and regulation of a pension plan, and thus does not "relate to" employee pension benefit plans as required for application of the federal preemption provision. (85 Cal.App.3d at pp. 909-912.)

Federal cases have relied upon California decisions, particularly *Campa*, to rule that a state court is not preempted by ERISA from ordering that pension benefits be paid directly to the divorced spouse of a covered employee as part of the distribution of community property, despite the inclusion of an antialienation provision in the instrument governing the plan. (See *Bd. of Trustees of Carpenters Pension* v. *Reyes* (9th Cir. 1982) 688 F.2d 671, 673; *Carpenters Pension Trust* v. *Kronschnabel, supra,* 632 F.2d 745, 748-749.) The federal courts have also specifically approved of garnishment of ERISA pension plan benefits by writ of execution to satisfy spousal support arrearages.

For example, in *Operating Engineers, etc.* v. *Zamborsky* (9th Cir. 1981) 650 F.2d 196, the court ruled that neither the preemption (29 U.S.C. § 1144(a)) nor the antialienation (29 U.S.C. § 1056(d)(1)) provisions of ERISA preclude garnishment of employee pension plan benefits to satisfy spousal support obligations. The court explained that, under the supremacy clause, "'. . . a state statute is void to the extent that it actually conflicts with a valid federal statute.' *Ray* v. *Atlantic Richfield Co.,* 435 U.S. 151, 158, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978)." (*Id.,* at p. 200.) The court added: "Two tests must be applied to determine whether or not a conflict exists. 'A conflict will be found "where compliance with both federal and state regulations is a physical impossibility . . .," *Florida Lime & Avocado Growers, Inc.* v. *Paul,* 373 U.S. 132, 142-43 . . . (1963), or where the state "law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines* v. *Davidowitz,* 312 U.S.

52, 67 . . . (1941); *Jones* v. *Rath Packing Co.,* [430 U.S. 519] 526, 540-41 . . . (1977).' " (*Ibid.*)

Citing the strong state interest associated with domestic relations laws, which must do " 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden" (*id.,* at p. 199, quoting from *Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572, 581 [59 L.Ed.2d 1, 11, 99 S.Ct. 802]), the court concluded that "a state law . . . which allows an individual to garnish his or her ex-spouse's pension benefits is impliedly excepted from ERISA's pre-emption provision, 29 U.S.C., § 1144(a)." (*Id.,* at p. 200.) In recognizing an *implied exception* to preemption, the court observed that such garnishment does not create an obstacle to accomplishment of the full purposes and objectives of ERISA and is possible without violating the antialienation provision. (*Id.,* at pp. 200-201; see also *Cody* v. *Riecker* (2d Cir. 1979) 594 F.2d 314, 315-316; *American Tel. & Tel. Co.* v. *Merry* (2d Cir. 1979) 592 F.2d 118, 125.)

Appellant argues that *Zamborsky* is distinguishable from the present case on the ground that the trust agreement here under consideration contains, in article II, section 6, an antialienation provision which is broader in scope than section 206(d)(1) and specifically decrees that "no pension, prospective pension, right or interest of a Covered Employee or Retired Employee shall be subject to any order, decree, execution or other legal or equitable process or proceeding for the benefit of such spouse directed to the Fund." We disagree. The expanded scope of the trust agreement clause does not enlarge the antialienation provision of federal law, and it is only the latter which might conceivably supersede a state court domestic relations order.

Appellant submits that the United States Supreme Court's opinion in *Alessi* v. *Raybestos-Manhattan, Inc.* (1981) 451 U.S. 504 [68 L.Ed.2d 402, 101 S.Ct. 1895], treats terms contained in collective bargaining agreements as the equivalent of federal law for purposes of determining a conflict with state law requiring preemption. The court in *Alessi* merely decreed that "[W]here, as here, the pension plans emerge from collective bargaining, the additional federal interest in precluding state interference with labor-management negotiations calls for *pre-emption* of state efforts to *regulate pension terms.*" (Italics added.) (*Id.,* at p. 525 [68 L.Ed.2d at p. 418].) At issue in *Alessi* was a New Jersey statute prohibiting automatic offsets against workers' compensation retirement benefits. Such offsets were specifically provided for by the income integration features of the governing federal statutes and pension plan provisions. The court characterized the state law as one "that relates to" an employee benefit plan, even though it was labeled a workers' compensation statute, since in substance it regulated pension

benefits. Here, in contrast, the garnishment under the California Family Law Act does not seek to regulate the employee benefit plan; rather, it is merely used to satisfy spousal support obligations once the right to disability benefits in a settled amount and in accordance with the provisions of the fund has already been determined. The garnishment does not "relate to" an employee benefit plan as required for preemption under 29 United States Code section 1144(a). (*In re Marriage of Johnston, supra,* 85 Cal.App.3d 900, 909.)

In the recent case of *Sav. & Profit Sharing Fund of Sears Emp.* v. *Gago* (7th Cir. 1983) 717 F.2d 1038, a Wisconsin court order directing a retirement fund to pay an employee's spouse a portion of retirement monies was affirmed. The court read the recent decision of the United States Supreme Court in *Shaw* v. *Delta Air Lines, Inc.* (1983) 463 U.S. 85 [77 L.Ed.2d 490, 103 S.Ct. 2890], as declaring that a law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan," but not if the effect is " 'too tenuous, remote or peripheral . . . .' " (*Id.,* at p. 1040.)[4] Noting *Shaw*'s "approving reference to the *Merry* result," the court decided that the state's domestic relations law does not, under this test, sufficiently "relate to" the employee pension benefit plan to trigger the ERISA preemption provision (29 U.S.C. § 1144(a)). (*Id.,* at p. 1040.) The court concluded that the antialienation provision of ERISA was not intended by Congress to rebut the strong presumption of nonpreemption of state domestic relations law. (*Id.,* at pp. 1041-1042.)

We acknowledge that *Alessi* directs us to consider terms in a collective bargaining agreement to determine whether an "intrusive state law" seeks to "regulate pension terms." We also recognize that article II, section 6 of the trust agreement specifically prohibits execution upon fund benefits by the spouse of a covered employee. Nevertheless, we conclude that the state domestic relations law here at issue does not seek to "regulate pension terms," and thus does not "relate to" an employee pension benefit plan within the meaning of the ERISA preemption provisions. (*In re Marriage of Johnston, supra,* 85 Cal.App.3d 900, 909-912; *Sav. & Profit Sharing Fund of Sears Emp.* v. *Gago, supra,* 717 F.2d 1038, 1040; *American Tel. & Tel. Co.* v. *Merry, supra,* 592 F.2d 118, 121.) We also find that garnishment of employee pension benefit funds to satisfy spousal support obligations is "impliedly excepted" from preemption by ERISA provisions. (*Operating Engineers, etc.* v. *Zamborsky, supra,* 650 F.2d 196, 199.)

---

[4]In so doing, the court quoted from *Shaw,* and particularly from a footnote therein where, citing with approval *American Telephone and Telegraph Co.* v. *Merry, supra,* 592 F.2d 118, 121, the court stated: " 'Some state actions may affect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law "relates to" the plan.' "

■ Appellant argues finally that the recent enactment of the Retirement Equity Act of 1984 (hereafter the Act) indicates a congressional intent to give priority to federal law precluding assignment or alienation of ERISA pension plan benefits. Section 104, subsection (a) of the Act amends section 206(d) of ERISA (29 U.S.C. § 1056(d)) by specifically providing that pension plan benefits can only be assigned pursuant to a "qualified domestic relations order."[5] The same subsection of the Act defines a "qualified domestic relations order." The new law has thus created a specific exception to the ERISA spendthrift provisions. But we find in the Act no intent to make the present judgment invalid under federal law as a nonqualifying domestic relations order. The objective of the Act, according to its legislative history (Cong. Rec., Aug. 2, 1984, at pp. S9671-S9681, Aug. 6, 1984, at pp. S9732-S9746, and Aug. 9, 1984, at pp. H8748-H8766), is to clarify existing law, acknowledged to be divergent, by creating a specific limited exception that permits pension benefits to be divided under certain

---

[5]In pertinent part, section 104(a) provides: "(a) IN GENERAL.—Section 206(d) (29 U.S.C. 1056(d)) is amended by adding at the end thereof the following new paragraph:

"(3)(A) Paragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.

"(B) For purposes of this paragraph—

"(i) the term 'qualified domestic relations order' means a domestic relations order—

"(I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

"(II) with respect to which the requirements of subparagraphs (C) and (D) are met, and

"(ii) the term 'domestic relations order' means any judgment, decree, or order (including approval of a property settlement agreement) which—

"(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and

"(II) is made pursuant to a State domestic relations law (including a community property law).

"(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—

"(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

"(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

"(iii) the number of payments or period to which such order applies, and

"(iv) each plan to which such order applies.

"(D) A domestic relations order meets the requirements of this subparagraph only if such order—

"(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

"(ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

"(iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order."

well-defined guidelines. The legislative history of the Act does not condemn former case law permitting distribution of pension benefits to former spouses to satisfy spousal support obligations; rather, it merely recognizes the need for uniform standards.

The new law also contains a transitional provision which saves the present judgment from the operation of the Act. The effective date of the Act, according to section 303(d), is January 1, 1985. Pursuant to section 303(d)(1), all domestic relations orders entered before that date must be treated as "qualifying domestic relations orders."[6] Hence, not only does the Act recognize that federal preemption and antialienation provisions are not persuasive in this field, but all domestic relations orders entered before the effective date of the new law, such as the present judgment, are recognized as valid by the new law.[7] We accordingly conclude that the trial court had jurisdiction to award appellant's pension.

■ We agree, however, with appellant's contention that the trial court erred by ordering the fund to "comply with the several writs of execution *in their full amount.*"

Three notices of garnishment were served on the fund on the following dates: February 26, 1981; December 8, 1981; and March 8, 1982. Each notice stated the full amount due to respondent and requested "all monies . . . in your possession or under your control belonging to or owing" to Powell except any such earnings exempt by law from garnishment. The court ordered compliance by the fund with the writs of execution "in their full amount," without reference to exemptions or amounts actually owing to Powell on the date each notice of garnishment was served. The fund was thereafter apparently served with a notice of garnishment based on a writ of execution issued on July 8, 1982, in the total amount of $14,130.81.

By an elaborate statutory scheme, California allows limited execution upon public pension benefits. Under Code of Civil Procedure section 704.110 (formerly § 690.18),[8] subdivision (c), "public retirement benefits"

---

[6] "The amendments made by Sections 104 and 204 [making parallel amendments to the Internal Revenue Code] shall take effect on January 1, 1985, except that in the case of a domestic relations order entered before such date, the plan administrator— [¶] (1) shall treat such order as a qualified domestic relations order if such administrator is pay [*sic*] benefits pursuant to such order on such date, and [¶] (2) may treat any other such order entered before such date as a qualified domestic relations order even if such order does not meet the requirements of such amendments."

[7] We therefore need not decide whether the present judgment is a "qualifying domestic relations order."

[8] Section 690.18 was repealed effective July 1, 1983. As of that date, section 704.110 was effective, and it is in substance equivalent to former section 690.18.

payable to a person are subject to execution if "sought to be applied to the satisfaction of a judgment for child or spousal support against that person . . . ." (*In re Marriage of McGhee* (1982) 131 Cal.App.3d 408, 413-414 [182 Cal.Rptr. 456].) An exemption is provided in subdivision (c)(1) "only to the extent that the court determines under subdivision (c) of Section 703.070." Code of Civil Procedure section 703.070, provides, in subdivision (c), that ". . . if property sought to be applied to the satisfaction of a judgment for child or spousal support is shown to be exempt under subdivision (a) in appropriate proceedings, the court shall, upon noticed motion of the judgment creditor, determine the extent to which the exempt property nevertheless shall be applied to the satisfaction of the judgment. In making this determination, the court shall take into account the needs of the judgment creditor, the needs of the judgment debtor and all the persons the judgment debtor is required to support, and all other relevant circumstances. The court shall effectuate its determination by an order specifying the extent to which the otherwise exempt property is to be applied to the satisfaction of the judgment." Subdivision (a) merely states that all exemptions specified in chapter 4 "apply to a judgment for child or spousal support."

Where, as here, the amount sought to be applied to the satisfaction of the judgment is payable periodically, subdivision (c)(2) of section 704.110 directs that "the amount to be withheld pursuant to the assignment or other procedure shall not exceed the amount permitted to be withheld on an earnings withholding order for support under Section 706.052." According to Code of Civil Procedure section 706.052, subdivision (a), an exemption is provided for "one-half of the disposable earnings (as defined by Section 1672 of Title 15 of the United States Code) of the judgment debtor . . ." if the earnings withholding order "is a withholding order for support under Section 706.030." Subdivision (b) of section 706.052 directs the court to "make an equitable division of the judgment debtor's earnings" upon motion of "any interested party." Under subdivision (c), however, a withholding order may never exceed "the amount that may be withheld for support under federal law under Section 1673 of Title 15 of the United States Code."

Turning to the federal law as section 706.052 directs, 15 United States Code section 1672(a) defines the term "earnings" as used in the Consumer Credit Protection Act as including periodic payments pursuant to a pension or retirement program. Section 303(b) of the Act as amended, 15 United States Code section 1673(b)(2), provides that the maximum part of the aggregate disposable earnings of an individual for any work week which is subject to garnishment to enforce any order for the support of any person

shall not exceed 65 percent where, as here, the debtor is not supporting a spouse or dependent child.[9]

 Moreover, pension benefits are considered contingent and uncertain obligations and accordingly cannot be garnished until they become due and payable. (*Thomas* v. *Thomas* (1961) 192 Cal.App.2d 771, 778-779 [13 Cal.Rptr. 872].) Future benefit payments are not subject to garnishment. (*First Central Coast Bank* v. *Cuesta Tit. Guarantee Co.* (1983) 143 Cal.App.3d 12, 16 [191 Cal.Rptr. 433]; *Thomas, supra.*) "In order to be subject to garnishment, it must definitely appear that a debt or credit actually exists. The attaching creditor can acquire no greater right in the attached property than the debtor has at the time of the levy. (*Dawson* v. *Bank of America* [1950] 100 Cal.App.2d 305 [223 P.2d 280].)" (*First Central Coast Bank, supra,* at p. 16.) Thus, to the extent that the order contemplates future garnishment of yet uncertain and contingent pension benefits, it is without justification.[10] (*First Central Bank, supra,* at p. 17.)

The trial court therefore erred by directing the fund to pay all benefits to respondent on the writs of execution served on February 26 and December 8, 1981. On those dates, the monthly pension payment to Powell had already been paid; nothing was due and payable to the debtor, and the future payments were not subject to garnishment. (*Thomas, supra,* at p. 779; *Watson* v. *Watson* (E.D.N.C. 1976) 424 F.Supp. 866.) Only the levy made on March 8, 1982, sought pension benefits actually owed to Powell.

The judgment is modified to order compliance with the writs of execution to the extent of no more than 65 percent of the amount actually owing to

---

[9]Subdivision (b)(2) of 15 United States Code section 1673, provides: "(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed—

"(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and

"(B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week; except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum and the 60 per centum specified in clause (B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek."

[10]We note, however, that the judgment does not seem to require the fund to pay to respondent any such future benefits.

appellant at the time of execution. In all other respects the judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.