AMERICAN TELEPHONE AND TELEGRAPH COMPANY and Chemical Bank, Plaintiffs-Appellants-Cross Appellees,

v.

Ann R. MERRY and Addison D. Merry, Defendants,

Ann R. Merry, Defendant-Appellee-Cross Appellant.

Nos. 450, 451, Dockets 78–7484, 78–7518.

United States Court of Appeals, Second Circuit.

Argued Nov. 17, 1978.

Decided Jan. 29, 1979.

Scott J. Macey, Saul Scheier, Basking Ridge, N. J., Maurice T. Fitzmaurice, Hartford, Conn. (Reid & Reige, P. C., Hartford, Conn., F. Mark Garlinghouse, New York City, and James A. DeBois, San Francisco, Cal., of counsel), for plaintiffs-appellants.

Whitman & Ransom, Greenwich, Conn. (Joseph Mitchell Kaye, William A. Phillips, Jennifer Boyd, and Michael R. Zients, Greenwich, Conn., of counsel), for defendant-appellee, cross-appellant Ann R. Merry.

M. Carr Ferguson, Asst. Atty. Gen., Washington, D. C. (William A. Friedlander, Leonard J. Henzke, Jr., Jo-Ann Horn, Washington, D. C., and Richard Blumenthal, U. S. Atty., New Haven, Conn., of counsel), for United States, amicus curiae.

Before MANSFIELD and OAKES, Circuit Judges, and WERKER, District Judge.*

WERKER, District Judge:

This is an appeal from a judgment of the Connecticut District Court (Newman, J.), declaring that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* does not prohibit enforcement of a state court's garnishment order directed at pension payments to satisfy a spouse's court ordered support obligations, and dismissing without prejudice appellee's cross claim as not within the appropriate jurisdiction of the court. For the reasons set forth below the judgment of the District Court is affirmed.

## FACTS

In 1965, after nineteen years of marriage, Addison and Ann Merry entered into a separation agreement; shortly thereafter they obtained a divorce decree from the Connecticut Superior Court. The agreement and decree required Mr. Merry to pay Mrs. Merry alimony and child support in the amount of one-half his retirement income from the pension plan of appellant American Telephone and Telegraph Company ("AT&T").[1] These payments were to commence on the first day of the first month following retirement from AT&T after September 13, 1973. Subsequently, Mr. Merry moved from the state of Connecticut and discontinued alimony and support payments to Mrs. Merry. He is apparently a Florida resident at present, although he advised the District Court below by letter that he is currently in the Bahamas. Due to delinquencies in his payment obligations to his former wife, Mr. Merry was adjudged in contempt by the Superior Court on September 16, 1977 and determined to be in arrears through August 31, 1977 in the amount of $17,508.02. In January of 1978 Mrs. Merry, in an attempt

---

* Honorable Henry F. Werker, District Judge of the Southern District of New York, sitting by designation.

1. Co-appellant Chemical Bank administers the plan.

to recover that sum plus the amount of payments that had accrued in the interim together with attorney's fees, moved the Superior Court for a judgment and garnishment order. The requested relief was granted, and on February 3, 1978 the court issued an order garnisheeing Mr. Merry's interest in the AT&T pension plan in the amount of $22,422.34 for arrearages in support payments. AT&T was then served with the order of garnishment.

On April 21, 1978 appellants, uncertain of their fiduciary rights and obligations under ERISA, commenced this action to obtain a declaratory judgment as to whether Mr. Merry, or rather Mrs. Merry, is entitled to receive the pension payments as they become due. Jurisdiction was predicated upon diversity of citizenship, 28 U.S.C. § 1332, federal question, 28 U.S.C. § 1335, and ERISA § 502, 29 U.S.C. § 1132. While this federal action was pending, Mrs. Merry obtained a supplemental state court judgment against Mr. Merry for additional arrearages and counsel fees aggregating $32,373.92. Thereafter, claiming an entitlement to pension payments until the supplemental judgment was satisfied, Mrs. Merry asserted the supplemental judgment as a cross claim against her former husband in her answer in the District Court. This was done in the hopes of obtaining a federal judgment against Mr. Merry for the entire amount of the state court supplemental judgment; Mr. Merry, however, was not served with the cross claim in the manner contemplated by Fed.R.Civ.P. 5.[2]

Two issues are presented on appeal. Appellants AT&T and Chemical Bank argue that the District Court erred in holding that a state court order of garnishment directed against a pension plan to satisfy court ordered alimony and child support obligations is an implied exception to ERISA's prohibition against assignment and alienation of benefits. Secondly, appellee Ann Merry contends that the District Court improperly declined jurisdiction over her cross claim against her former husband for the amount of the supplemental state court judgment.

## DISCUSSION

### A.

In enacting ERISA Congress established a comprehensive federal scheme for the protection of pension plan participants and their beneficiaries. Finding "that the continued well-being and security of millions of employees and their dependents are directly affected by these plans . . . ," ERISA § 2(a), 29 U.S.C. § 1001(a), Congress prescribed various disclosure and reporting requirements,[3] participation and vesting standards,[4] fiduciary obligations,[5] criminal penalties,[6] and civil enforcement provisions[7] to effectuate the statute's policy of protecting "interstate commerce and the interests of participants in employee benefit plans and their beneficiaries . . . ." ERISA § 2(b), 29 U.S.C. § 1001(b). We are asked on appeal to construe two particular sections of ERISA.

The first relevant section is ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1). It states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated."[8] A provision

---

2. Rule 5(a) provides in relevant part:
   No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4.

3. 29 U.S.C. §§ 1021–31.

4. 29 U.S.C. §§ 1051–61.

5. 29 U.S.C. §§ 1101–14.

6. 29 U.S.C. § 1131.

7. 29 U.S.C. § 1132.

8. Subparagraph (d)(2) of ERISA § 206, 29 U.S.C. § 1056, furnishes limited exceptions to the nonassignment and nonalienation clause of subparagraph (d)(1). It states:
   (2) For the purposes of paragraph (1) of this subsection, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment, or of any irrevocable assignment or alienation of benefits executed before September 2, 1974. The preceding sentence shall not apply to any assignment or

almost identical to ERISA § 206 is found in Internal Revenue Code § 401(a)(13), 26 U.S.C. § 401(a)(13), wherein assignment or alienation of benefits is also prohibited if a pension plan is to be considered a tax qualified plan.[9] The other ERISA provision that bears on the present issue is section 514(a) which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). AT&T, relying on the plain language of these statutory sections and silent legislative history surrounding the question of whether an implied exception exists for garnisheeing pension payments to meet court ordered family support obligations, urges a literal reading of these statutory provisions.

Turning to ERISA's preemption clause, appellants argue that those state laws preempted by ERISA are broadly defined to include "all laws, decisions, rules, regulations, or other State action having the effect of law . . . ." ERISA § 514(c)(1), 29 U.S.C. § 1144(c)(1). They contend that Mrs. Merry's state court garnishment order is such a state law and that therefore it must be regarded as preempted absent an express statutory exception. Such a strict, literal construction, however, would necessarily lead to the unreasonable conclusion that Congress intended to preempt even

those state laws that only in the most remote and peripheral manner touch upon pension plans. *See Stone v. Stone,* 450 F.Supp. 919, 932 (N.D.Cal.1978), *appeal pending,* No. 78–2313 (9th Cir.). And, in this particular instance, that interpretation would include placing a limitation on state authority to enforce alimony and support orders where the monetary source to be garnisheed is a spouse's income derived from pension payments.

We reject appellants' proffered statutory construction and believe the more reasonable interpretation to be that a garnishment order used to satisfy court ordered family support payments is impliedly excepted from preempted state law relating "to any employee benefit plan," ERISA § 514(a), 29 U.S.C. § 1144(a) and also from the alienation and assignment proscription of ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1). Two District Courts in this circuit have already so concluded. *Cartledge v. Miller,* 457 F.Supp. 1146 (S.D.N.Y. 1978); *Cody v. Riecker,* 454 F.Supp. 22 (E.D.N.Y.1978), *appeal pending,* No. 78–7460 (2d Cir.).

In *Cartledge,* a state court order of garnishment issued against the pension fund of a husband to meet support obligations, including arrearages, owed to his wife. Pension administrators of the husband's plan sought to enjoin enforcement of the state

---

alienation made for the purposes of defraying plan administration costs. For purposes of this paragraph a loan made to a participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued nonforfeitable benefit and is exempt from the tax imposed by section 4975 of Title 26 (relating to tax on *prohibited transactions) by reason of section* 4975(d)(1) of Title 26.
The House Conference Report indicates that "a garnishment or levy is not to be considered a voluntary assignment" under section 206(d). H.R.Rep. No. 93–1280, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 5038, 5061. The balance of the legislative history relevant to section 206 is silent as to whether an exception is implicit for satisfying court ordered spousal support payments from pension monies. The main purpose of the section is made entirely clear though—the proscription on assignment and alienation of benefits is designed to "ensure

that the employee's accrued benefits are actually available for retirement purposes." H.R. Rep. No. 93–807, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 4670, 4734.

**9.** The Treasury Department Regulations promulgated under the Code also contain this prohibition and state "that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process." 26 C.F.R. § 1.401(a)–13(b)(1). Exceptions similar to those found in ERISA § 206(d)(2), 29 U.S.C. § 1056(d)(2), are included in 29 C.F.R. § 1.401(a)–13(d). In addition, the regulation is similar to ERISA's legislative history in that it provides that "an attachment, garnishment, levy, execution, or other legal or equitable process is not considered a voluntary assignment or alienation." *Id. See* note 8 *supra.*

court order on the same grounds asserted here. Judge Weinfeld determined that the "generalized proscriptions" of ERISA's anti-alienation and assignment provision and the statute's preemption clause were "not sufficient to infer that Congress meant to preclude the ancient family law right of maintenance and support and the issuance of process to enforce that right." 457 F.Supp. at 1154. This construction is consistent, the court continued, with the "fundamental principle of statutory interpretation [whereby] courts have presumed that the basic police powers of the States, particularly the regulation of domestic relations, are not superseded by federal legislation unless that was the clear and manifest purpose of Congress." *Id.* (footnote omitted).[10] Two months prior to the *Cartledge* decision the same result was reached in *Cody v. Riecker,* 454 F.Supp. 22 (E.D.N.Y.1978). There a woman obtained a Family Court judgment against her husband for support arrears. When the county sheriff attempted to levy on his pension benefits to enforce the judgment, trustees of the pension plan sought an injunction, contending that ERISA barred execution upon the benefits. Judge Nickerson also refused to presume congressional intent under the statute to preempt and prevent court ordered enforcement of the state-created spousal obligation of support "in the absence of an unambiguous declaration of intent." 454 F.Supp. at 24. Thus an exception to ERISA's provisions was implied in the limited instance of enforcement of a retiree's family obligations. 454 F.Supp. at 25.

Although this circuit appears to be the first appellate court confronted with the present issue, there is additional case law that is in unison with both of the above District Court determinations as well as our decision today. At least three New York state courts have already found an implied exception to ERISA in family support situations. *See Cogollos v. Cogollos,* 93 Misc.2d 406, 402 N.Y.S.2d 929 (Sup.Ct.N.Y. County 1978) (deduction order directed at husband's ERISA covered pension under New York

Personal Property Law § 49–b held not violative of ERISA's ban on alienation and assignment of benefits); *Wanamaker v. Wanamaker,* 93 Misc.2d 784, 401 N.Y.S.2d 702 (Family Ct. Rockland County 1978) (dependent wife, attempting to enforce alimony claim via wage deduction order against husband's pension, not a creditor under ERISA § 206 and therefore not foreclosed from collecting pension benefits by that section's preclusion on alienation and assignment); *M. H. v. J. H.,* 93 Misc.2d 1016, 403 N.Y.S.2d 411 (Family Ct. Queens County 1978) (ERISA's nonassignment and nonalienation clause construed not to defeat garnishment of pension funds for child support payment). To the same effect under New Jersey law *see Biles v. Biles,* 216 Pens. Rep. (BNA) at D–1 (Super.Ct.Ch.Div. Morris County Oct. 2, 1978). A California District Court decision, *Stone v. Stone,* 450 F.Supp. 919 (N.D.Cal.1978), *appeal pending,* No. 78–2313 (9th Cir.) involved an analogous situation. There the questions were whether a wife's award of her community property interest in her former spouse's pension benefits constituted an assignment or alienation under ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1), and whether California's community property laws were preempted by ERISA § 514(a), 29 U.S.C. § 1144(a). Preferring to treat the nonemployee spouse's claim to her husband's pension as an ownership interest rather than a creditor interest, the court found that payment of the former wife's community property share did not conflict with section 206(d)(1). The court reasoned that ERISA seeks to protect the families of employees as well as employees themselves, and noted that "[i]t would be ironic indeed if a provision designed in part to ensure that an employee spouse would be able to meet his obligations to family after retirement were interpreted to permit him to evade them with impunity after divorce." 450 F.Supp. at 926. The *Stone* court also declined to find California's community property laws included in the preempted category of those

10. *See Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 157, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

laws that "relate to any employee benefit plan," ERISA § 514(a), 29 U.S.C. § 1144(a), absent a clear congressional intent to do so. 450 F.Supp. at 931–33. To hold otherwise, the court stated, "would deprive nonemployee spouses of the share in marital assets which they indirectly helped to acquire, and . . . leave them without effective remedies against their husbands . . . ." 450 F.Supp. at 933 (citations omitted).[11]

The two District Court cases cited by appellants wherein nonemployee spouses were refused financial redress against their husbands' pension plans are not persuasive. In *General Motors Corp. v. Townsend,* 177 Pens.Rep. (BNA) at D–1 (E.D.Mich.1976) the court merely relied upon the explicit language of the statute without any consideration of family support obligations as a special type of debt, and without reference to the strong public policy and interest of the state in having a spouse fulfill his support obligations. The same was true in *Francis v. United Technologies Corp.,* 458

F.Supp. 84 (N.D.Cal.1978) where the *Stone* rationale as to California's community property laws was rejected in favor of a literal reading of ERISA's preemption and nonassignment and nonalienation clauses.

The propriety of rejecting the literal statutory interpretation of the *General Motors* and *Francis* courts and of construing ERISA to except the states' means of enforcement of family obligations also has support in judicial interpretations of other statutes. For example, in *Wetmore v. Markoe,* 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904), the Supreme Court was asked to determine a husband's financial obligations as to court ordered alimony and child support after his discharge in bankruptcy. This occurred where the bankrupt's discharge predated the application of Bankruptcy Act § 17(a)(7), 11 U.S.C. § 35(a)(7), which excepts alimony and family support payments as released debts after the debtor's discharge in bankruptcy.[12] The Court

---

**11.** More recently the Supreme Court held in *Hisquierdo v. Hisquierdo,* —— U.S. ——, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) that a spouse's expectation of retirement benefits under the Railroad Retirement Act, 45 U.S.C. § 231 *et seq.,* is not an item of community property divisible between husband and wife upon divorce.

45 U.S.C. § 231d(c)(3) stipulates that retirement benefits to the non-employee spouse end upon divorce. Section 231m further provides in relevant part:

Notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated . . . .

The purpose of this section is to ensure that an annuitant receives his pension benefits. —— U.S. at —— n.7, 99 S.Ct. at 805, *citing* Hearings on S.2395 before the Senate Committee on Interstate Commerce, 75th Cong., 1st Sess., 29 (1937). After analyzing section 231m and Congress's unequivocally voiced intent in section 231d(c)(3) to terminate spousal retirement rights upon divorce, the Court found that the California community property interest sought by the non-employee divorced wife conflicted with section 231m and was therefore violative of the supremacy clause. —— U.S. at ——, 99 S.Ct. at 813. In conclusion, the Court specifically noted that its holding was limited to the Railroad Retirement Act benefits in issue. As

to private pension plans, like that in *Stone v. Stone, supra,* the majority stated that

[d]ifferent considerations might well apply where Congress has remained silent on the subject of benefits for spouses, particularly when the pension program is a private one which federal law merely regulates. See Employee Retirement Income Security Act of 1974, 88 Stat. 829, 29 U.S.C. § 1001 *et seq.* Our holding intimates no view concerning the application of community property principles to benefits payable under programs that possess these distinctive characteristics.

—— U.S. at —— n.24, 99 S.Ct. at 813.

Despite the preclusion on considering Railroad Retirement Act benefits as items of community property upon divorce, it is beyond peradventure that the same benefits may be garnisheed to satisfy child and spousal support obligations pursuant to Social Security Act § 459, 42 U.S.C. § 659. *Hisquierdo,* —— U.S. at ——, 99 S.Ct. at 811. *See also* text accompanying notes 14 & 15 *infra.*

**12.** Section 17(a)(7) provides in relevant portion:

(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as

. . .

(7) are for alimony due or to become due, or for maintenance or support of wife or child . . . .

11 U.S.C. § 35(a)(7).

declined to regard the traditional obligation of family support as a simple debt and recognized it as more in the nature of a continuing duty imposed by law. Thus the Court inferred an exception to the bankrupt husband's discharge, noting that "[t]he bankruptcy law should receive such an interpretation as will effectuate its beneficent purposes, and not make it an instrument to deprive dependent wife and children of the support and maintenance due them from the husband and father, which it has ever been the purpose of the law to enforce." 196 U.S. at 77, 25 S.Ct. at 175. Similarly, in the subsequent case of *Schlaefer v. Schlaefer,* 71 App.D.C. 350, 112 F.2d 177 (1940), the satisfaction of spousal support was found to be impliedly excepted from section 16a of the Life Insurance Act for the District of Columbia which exempted disability insurance from garnishment, attachment, execution and other legal process used to enforce repayment of a debt or liability. *See* 71 App.D.C. at 357, 112 F.2d at 184. The court construed the statute's broad exemption as one designed to insulate the recipient's insurance payments from ordinary creditors, a class that did not include family members as legal dependents who are owed a "duty of higher obligation." 71 App.D.C. at 359, 112 F.2d at 186. As the court stated, "the usual purpose of exemptions is to relieve the person exempted from the pressure of claims hostile to his dependents' essential needs as well as his own personal ones, not to relieve him of familial obligations and destroy what may be the family's last and only security, short of public relief. . . . The duty is to share, not to desert, when trouble comes." *Id.* 71 App.D.C. at 358, 112 F.2d at 185, quoted in *Cody v. Riecker,* 454 F.Supp. at 25. This reasoning, as noted in *Cody,* is equally applicable in an ERISA context. The purpose of the proscription on alienation and assignment is to protect an employee from his own financial improvidence in dealings with third parties. The provision is not intended to alter traditional support obligations but rather to assure that the employee and his beneficiaries reap the ultimate benefits due upon retirement. *See Cody v. Riecker,* 454 F.Supp. at 25.[13]

Our finding of an implied exception is not only in furtherance of Congress's concern for the well-being of employees and their dependents as expressed in ERISA § 2(a), 29 U.S.C. § 1001(a), but is also consistent with the federal policy of enforcing support obligations and establishing paternity under the 1974 Social Services Amendments to the Social Security Act ("SSA") and in particular the Title IV–D program. *See* SSA §§ 451–62, 42 U.S.C. §§ 651–62. The 1974 amendments were "primarily designed to combat increases in welfare payments resulting from an inability to compel payment of support obligations from solvent but unwilling parents." *Hisquierdo v. Hisquierdo,* —— U.S. at —— n.20, 99 S.Ct. at 811, 59 L.Ed.2d at —— (1979), *citing* S.Rep. No. 93–1356, pp. 42–43 (1974). *See also Cartledge v. Miller,* 457 F.Supp. at 1157. To this end the amended SSA requires, as a condition of eligibility for receipt of aid to dependent children, that the applicant assign to the state any accrued rights to support from another person. 42 U.S.C. § 602(a)(26)(A).[14]

---

**13.** Exemption provisions analogous to ERISA § 206, 29 U.S.C. § 1056, *see, e. g.,* Social Security Act § 207, 42 U.S.C. § 407; Veterans Benefits Act § 3101(a), 38 U.S.C. § 3101(a); Railroad Retirement Act § 12, 45 U.S.C. § 231m have also been interpreted not to foreclose enforcement of family support obligations. *See Cartledge v. Miller,* 457 F.Supp. at 1155 and cases collected at nn.45–48 construing these exemptions.

**14.** A significant number of support petitions are filed each year with the courts throughout New York State. For example, between January 3, 1977 and January 1, 1978, 19,294 support petitions involving aid to dependent children were filed with the New York Family Court. During the same time period 24,851 support petitions not involving aid to dependent children were filed. Table 3–30, Family Court 22nd Annual Report of the New York State Administrative Board of the Judicial Conference at 102–03. Also during 1977, the second full year of the IV–D child support enforcement program, *see* text and note 15 *infra,* support payment collections by New York authorities aggregated approximately $41 million. This figure represented a 29 percent increase over collections made during the program's first full year. Report to the Governor and the Legisla-

Additionally, a federally subsidized program has been created within the Department of Health, Education and Welfare pursuant to Title IV–D to secure the states' collection of such monies.[15] Indeed, the United States has submitted itself to legal process for the purpose of enforcing against any individual his legal obligation to provide either alimony or child support payments, SSA § 459, 42 U.S.C. § 659, and the District Courts have been made available in certain instances to enforce court ordered support obligations assigned to the states. SSA § 460, 42 U.S.C. § 660; see SSA § 452(b), 42 U.S.C. § 652(b). It would clearly frustrate the aim of this statutory scheme to recover public assistance funds were we to hold that ERISA prohibits such recoupment when pension payments are involved. See Cartledge v. Miller, 457 F.Supp. at 1157–58 (court found state's collection of assigned pension funds as wife's surrogate consonant with ERISA's concern for well-being of family unit).

In arriving at the statutory construction that we have set forth today we have duly weighed appellants' contentions but find them to be without merit. Appellants' protestations that compliance with Mrs. Merry's state court garnishment order will subject them to claims of breach of fiduciary duty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), are unfounded in light of our judicial determination that an implied exception exists under the statute's own terms solely for court ordered support payments. It has long been the rule that fiduciary conduct is subject to judicial guidance and that a fiduciary acting pursuant to a court's instructions is protected from assertions of breach of duty. III Scott on Trusts § 259, at 2217 (3d ed. 1967). Appellants' next fear, loss of their plan's tax qualified status under Internal Revenue Code § 401(a)(13), 26 U.S.C. § 401(a)(13), is equally unjustified. The Tax Division of the Justice Department, in view of the interest of the Internal Revenue Service on the issue, has submitted an amicus curiae brief for the Secretaries of Labor and the Treasury, both of whom are vested by Congress with the responsibility for administering ERISA. The position enunciated therein is that an implied exception to ERISA's anti-alienation and assignment section does exist for the enforcement of family support obligations. Finally, appellants argue that an implied exception for court ordered support payments will result in unanticipated increases in pension plan administration costs. In our view, any increased administration costs must be regarded as a slight consideration when balanced against the heavy burden that will be imposed on the public treasury if dependent spouses and children cannot enforce support rights and must instead resort to welfare assistance.[16]

---

ture, Department of Social Services Office of Child Support Enforcement (March 1978). The New York State Department of Social Services reported that the IV–D program was quite effective on both the state and county levels, returning "$3.22 in State and local funds for every $1.00 spent by the State and localities on administration of the program." Id.

**15.** Among other things, under the terms of the statute the United States pays quarterly an amount equal to 75 percent of the total sum spent by the state in operating a plan approved by the Secretary of Health, Education and Welfare for enforcement and collection of child support payments. SSA § 455, 42 U.S.C. § 655(a)(1). Additional incentive payments are available for political subdivisions of a state and for those states that enforce and collect assigned support rights for another state. SSA § 458, 42 U.S.C. § 658. Further, an assignment

to a state of a child support obligation under 42 U.S.C. § 602(a)(26) continues to be a collectible debt in favor of the state and is not released by the obligated spouse's discharge in bankruptcy. SSA § 456, 42 U.S.C. § 656. For an overview of the 1974 Social Services Amendments in general, see Bernet, The Child Support Provisions: Comments on the New Federal Law, 9 Family L.Q. 491 (1975).

**16.** We acknowledge that unforeseen administrative complexities and attendant higher costs may arise in instances where pension plan benefits are payable as qualified joint and survivor annuities under ERISA § 205(a), 29 U.S.C. § 1055(a). We are not confronted with such a situation today, however, since Addison Merry's pension benefits are received each month in the form of a cash payout. Additionally, as Judge Newman aptly noted, the issue before us is one of statutory construction. If it is proper-

B.

Judge Newman dismissed Mrs. Merry's cross claim based upon the supplemental state court judgment after determining that the exercise of federal jurisdiction in this instance would be an inappropriate interference with state court jurisdiction in a domestic relations dispute. We affirm the dismissal, but on a different ground. Under Fed.R.Civ.P. 5(a) [17] Mr. Merry was required to be served with his former wife's answer containing her cross claim. Although the answer was indeed mailed to Addison Merry in Florida, see appellee's brief at 4, he does not appear to have been served in accordance with any of the procedures enumerated in Fed.R.Civ.P. 4. *See Martin v. New York State Department of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir. 1978). In the absence of proper service, the District Court had no *in personam* jurisdiction over Addison Merry to adjudicate the cross claim asserted against him. We leave to another day the issue of whether it would be appropriate for the District Court to exercise jurisdiction in a case where proper service has been effected. Suffice it to say that such is not the case here.

In accordance with the above, the judgment of the District Court is affirmed.

---

ly concluded that Congress intended to permit state court garnishment orders to satisfy marital obligations then our statutory construction must prevail despite any resultant and unresolved pension administration problems.

*American Telephone & Telegraph Co. v. Merry,* No. B–78–161, slip op. at 4 (D.Conn. Oct. 2, 1978).

