**SAVINGS AND PROFIT SHARING FUND OF SEARS EMPLOYEES, et al., Plaintiffs,**

v.

**Rudolph G. GAGO, Defendant-Appellant,**

**and**

**Elizabeth J. Kassa, et al., Defendants-Appellees.**

No. 82–1880.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1983.

Decided Aug. 31, 1983.

As Amended Sept. 21, 1983.

David L. Walther, Walther & Halling, Milwaukee, Wis., for defendant-appellant.

David C. Rice, Wis. Dept. of Justice, Madison, Wis., for defendants-appellees.

Before CUDAHY and ESCHBACH, Circuit Judges, and KELLAM, Senior District Judge.*

CUDAHY, Circuit Judge.

Appellant Rudolph Gago appeals from the district court's refusal to enjoin a Wisconsin state court order directing Gago's Retirement Fund to pay his former spouse a portion of Gago's retirement monies.[1] The district court held that the state court order was not preempted by or in conflict with the Employee Retirement Income Security Act of 1974 ("ERISA"). We affirm.

### I. Factual Background

A judgment was entered by the Wisconsin Family Court on April 9, 1979, dissolving the marriage of appellant Rudolph Gago and Elizabeth Kassa. As part of the property settlement, and pursuant to state law governing property distribution upon divorce,[2] the Wisconsin Family Court awarded Kassa one-half of the value of Gago's vested interest in the Savings and Profit Sharing Fund of Sears Employees (the "Fund"). Notwithstanding the order of the Wisconsin Family Court, however, Gago refused to pay Kassa. Consequently, Kassa demanded that the Fund itself pay her the portion of Gago's pension awarded by the court. The Fund refused to make the requested payment, contending that to do so would violate its ERISA-mandated obligations.

Kassa thereupon filed an action in the Milwaukee County Circuit Court, seeking to compel the Fund to pay her the amount ordered pursuant to the divorce judgment. The Wisconsin court, rejecting the Fund's ERISA arguments,[3] ordered the Fund to make immediate payments directly to Kassa.

The Fund then brought a federal court action seeking to enjoin enforcement of the state court order. The district court decided against the Fund and entered summary judgment for defendants.

Two sections of ERISA are in issue. First, section 514(a), 29 U.S.C. § 1144, may preempt Wisconsin law governing property settlements pursuant to divorce insofar as pension funds are involved. Second, the Wisconsin court's order directing the Fund to pay Kassa may constitute an assignment or alienation prohibited by section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1).

### II. Preemption of State Law By ERISA § 514(a), 29 U.S.C. § 1144(a)

Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.[4] We do not write on a clean slate when it comes to interpreting section 514(a). Indeed, the Supreme Court very recently construed this section. In *Shaw v. Delta Air Lines, Inc.,*

---

* Honorable Richard B. Kellam, Senior District Judge for the Eastern District of Virginia, is sitting by designation.

1. Gago was named as a defendant below, although he has been treated as being aligned with the Fund since, of course, it is his money which is at stake.

2. WIS.STAT.ANN. § 767.255 (West 1981).

3. The Ninth Circuit recently held in a similar case that a pension fund's federal court action to enjoin enforcement, on preemption grounds, of a state court's award was barred by the doctrine of *res judicata*. *Bd. of Trustees of Carpenters Pension Trust Fund v. Reyes,* 688 F.2d 671, 673 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3088, 77 L.Ed.2d 1349 (1983).

*Res judicata* was not raised by the appellee on appeal in the instant case. There is a split of authority whether that defense may be raised by the court *sua sponte* or whether failure to preserve it on appeal precludes its applicability. The better rule seems to be that *res judicata* must be properly preserved on appeal. *See* 18 C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4405 (1981).

4. (a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

29 U.S.C. § 1144(a).

—— U.S. ——, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Court held that a New York statute prohibiting discrimination in employee benefit plans on the basis of pregnancy, where otherwise lawful under federal law, is preempted by section 514(a) because the New York statute "relates to" employee benefit plans within the meaning of section 514(a). The *Shaw* opinion teaches that the key to understanding the scope of section 514(a)'s preemption rests in the language "relates to" and Congress' intent in using these words. The Court concluded that "relates to" should be given a very broad reading: "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.... In fact, ... Congress used the words 'relate to' in § 514(a) in their broad sense." *Shaw,* —— U.S. at ——, 103 S.Ct. at 2900.

The Court also recognized, however, that there are necessary limits to the reach of the phrase "relates to." In a footnote that may help to resolve the section 514(a) preemption question in the case before us, the Court stated:

> Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law "relates to" the plan. Cf. *American Telephone and Telegraph Co. v. Merry,* 592 F.2d 118, 121 (CA2 1979) (state garnishment of a spouse's pension income to enforce alimony and support orders is not pre-empted).

*Shaw,* —— U.S. at —— n. 21, 103 S.Ct. at 2901–02 n. 21.

We find persuasive, as apparently the Supreme Court did in *Shaw,* the distinction drawn by the Second Circuit in *AT & T v. Merry,* 592 F.2d 118, 121 (2d Cir.1979), between state laws which "relate to" an employee benefit plan and state laws which only "in the most remote and peripheral manner touch upon pension plans." In *AT & T v. Merry,* the Connecticut Superior Court ordered Mr. Merry to pay his former spouse alimony and child support in the amount of one-half his retirement income from the AT & T pension plan. When Merry failed to pay, the Connecticut Court issued an order garnishing his interest in the AT & T plan. AT & T, uncertain of its fiduciary rights and obligations under ERISA, commenced a federal court declaratory judgment action to determine whether it could pay to Mrs. Merry the amount ordered. The district court declared that AT & T was not precluded by ERISA from paying this amount. The Second Circuit affirmed, rejecting the "strict, literal construction" of section 514(a) that "would necessarily lead to the unreasonable conclusion that Congress intended to preempt even those state laws that only in the most remote and peripheral manner touch upon pension plans." *Merry.* 592 F.2d at 121.

Unfortunately, the "remote and peripheral" language used by the Second Circuit in *Merry* and the adjective "tenuous" added by the Supreme Court in *Shaw* do not delimit very precisely the scope of "relates to." As a practical matter, however, we think the close similarity between the facts of *Merry* and the case before us, coupled with the Supreme Court's apparently approving reference to the *Merry* result in *Shaw,* provide us with sufficiently persuasive authority to hold that section 514(a) does not preempt the Wisconsin court order. The only distinction of possible substance between *Merry* and the case before us is that *Merry* involved enforcement of alimony and support orders while this case involves property division. We do not see, however, how this distinction as to the character of the ordered payment, provided that it was integral to the dissolution of a marriage, makes any difference with respect to the scope of section 514(a). In any event, the argument need not solely or even primarily concern section 514(a), since there is another ERISA provision that appears to stand more clearly in the way of the Wisconsin court order: section 206(d), 29 U.S.C. § 1056(d).[5]

---

5. In addition, the fact that there is a provision specifically prohibiting assignments or alienations suggests that the scope of "relates to" does not encompass state laws that simply assign or alienate pension interests, as in the instant case. The contrary interpretation

### III. Conflict Between ERISA § 206(d) and the State Court Order

Even though not generally preempted by section 514, state law may still be preempted because of a direct conflict with a more specific section of ERISA. ERISA contains an express provision against assignment and alienation, section 206(d):

> (d)(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

29 U.S.C. § 1056(d)(1). Appellant argues that the plain meaning of section 206(d) prohibits all "assignments and alienations," including the assignment ordered by the Wisconsin court.

We must determine if in fact there is a conflict between the Wisconsin court order and section 206(d). The Supreme Court has articulated two tests for determining whether a sufficient conflict arises when a federal statute appears to clash with state law. The first of these tests provides that there is a sufficient conflict where "compliance with both federal and state regulations is a physical impossibility . . . ." *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). The second test provides that a conflict will be found where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

First, compliance with the letter of both ERISA and the state court order is not a physical impossibility. Section 206 requires that *a plan must "provide* that benefits provided under the plan shall not be assigned or alienated." 29 U.S.C. 1056(d) (emphasis supplied). As the Ninth Circuit noted in *Operating Engineers' Local 428 Pension Trust Fund v. Zamborsky,* 650 F.2d 196, 201 (1981), the plan *can be drafted* to conform with section 206, but a state court may still effectively require that the trustees of a plan not follow, or comply with, the plan's provision, as drafted. We agree

would make the anti-assignment clause redun-

with the Ninth Circuit that state law is not preempted under the first of these tests.

The second of the two tests focuses upon the purposes and objectives of Congress. Unfortunately, the legislative history of section 206(d) is rather limited. On the one hand, the general purpose of section 206 is to "ensure that the employee's accrued benefits are actually available for retirement purposes." H.R.REP. No. 807, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.CODE CONG. & AD.NEWS 4639, 4670, 4734. This statement of section 206's purpose can be read as indicating that the retirement fund is to be preserved solely for the worker's benefit and for the benefit of no one else, not even of his spouse and children. On the other hand, one of the stated general purposes of ERISA, as set forth in ERISA's statement of policy, is "the continued well-being and security of millions of employees *and their dependents.* . . ." 29 U.S.C. § 1001 (emphasis supplied). This, of course, could be read as supporting enforcement of the state court property division order. In fact, the Second Circuit in *AT & T v. Merry,* 592 F.2d 118, showing insight and realism, did read the anti-alienation provision this way:

> The purpose of the proscription on alienation and assignment is to protect an employee from his own financial improvidence in dealing with third parties. The provision is not intended to alter traditional support obligations but rather to assure that the employee and his beneficiaries reap the ultimate benefits due upon retirement.

*Id.* at 124.

Our uncertainty about Congress' actual intent with respect to the impact of section 206 on property division need not lead to an impasse because the Supreme Court has instructed us that when courts face a potential conflict between state domestic relations law and federal law, the strong presumption is that the state domestic relations law is not preempted:

> On the rare occasion when state family law has come into conflict with a federal statute, this court has limited review un-

dant.

der the Supremacy Clause to a determination whether Congress has "positively required by direct enactment" that state law be preempted. A mere conflict in words is not sufficient. State family and family-property law must do "major damage" to "clear and substantial" federal interests before the Supremacy Clause will demand that state law be overridden.

\* \* \* \* \* \*

The approach must be practical.... The pertinent questions are whether the right as asserted conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition.

*Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 583, 99 S.Ct. 802, 809, 59 L.Ed.2d 1 (1979) (citations omitted). *See also McCarty v. McCarty,* 453 U.S. 210, 220, 101 S.Ct. 2728, 2735, 69 L.Ed.2d 589 (1981).

In two recent cases involving *federal* pensions (paid in whole or in part out of *federal* funds), the Supreme Court found that the state domestic relations laws so conflicted with federal objectives that the state laws were preempted. For example, in *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the Court held that state courts were precluded from allocating military retirement pay pursuant to state community property laws upon dissolution of a marriage because these laws conflicted with the federal military retirement scheme. Similarly, in *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), the Court held that pension benefits afforded under the Railroad Retirement Act of 1974 were not community property subject to division upon dissolution of the marriage because division of the benefits by the state would conflict with

Congress' intended allocation of a federal benefit.

We think both *McCarty* and *Hisquierdo* are quite distinguishable from the case before us. In both those cases very specific federal concerns about the goals and administration of federal programs were identified, requiring the preemption of state law. That no similarly identifiable federal concerns seem to be protected by section 206 makes it at least more likely that Congress, in enacting section 206 of ERISA, did not intend to rebut the presumption of non-preemption of state domestic relations law. In *McCarty,* for example, the Court relied in part on the fact that the military retirement system was designed "to meet the personnel management needs of the active military forces," by serv[ing] as "an inducement for enlistment and re-enlistment, creat[ing] an orderly career path and ensur[ing] 'youthful and vigorous' military forces." *McCarty,* 453 U.S. at 232–33, 234, 101 S.Ct. at 1741, 1742. The *McCarty* Court also found that the state law would interfere with the military retirement system by "reduc[ing] the amounts that Congress has determined are necessary for the retired [service] member." *Id.* at 233, 101 S.Ct. at 2741. Similarly in *Hisquierdo,* the Court noted that Railroad Retirement Act benefits are financed by federal taxes and are "carefully targeted" toward "an amount thought appropriate to support an employee's old age and to encourage the employee to retirement." *Hisquierdo,* 439 U.S. at 584, 585, 99 S.Ct. at 810. Accordingly, the Railroad Retirement Act's anti-assignment clause "shields the distribution of benefits from state decisions that would actually reverse the flow of incentives Congress originally intended." *Id.* at 585, 99 S.Ct. at 810.

In contrast with *McCarty*[6] and *Hisquierdo,* in which the Court could identify defi-

---

**6.** Subsequent to the *McCarty* decision, Congress enacted the Uniformed Service Former Spouse Protection Act. 10 U.S.C.A. § 1408 (West Supp.1983). Under the terms of that provision, "[t]reatment of retired pay—with certain limitations—generally would be dependent on the divorce and property laws applied by the courts of the jurisdiction in which

a divorce or other related decree is issued." S.Rep. No. 502, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.CODE CONG. & AD.NEWS 1555, 1596, 1598. Further, "the committee intend[ed] the legislation to restore the law to what it was when the courts were permitted to apply State divorce laws to military retired pay." *Id.* at 1599.

nite federal objectives for which federal funds were specifically allocated, thereby justifying rebuttal of the presumption that state domestic relations laws are preserved, the case before us does not present such strong and clearly defined federal interests. Indeed, the Court noted specifically in *Hisquierdo* that Congress had provided a separate spouse's benefit in the Railroad Retirement Act and had terminated that benefit upon absolute divorce. The Court then went on to state:

> *Different considerations might well apply where Congress has remained silent on the subject of benefits for spouses, particularly when the pension program is a private one which federal law merely regulates.* See Employee Retirement Income Security Act of 1974, 88 Stat. 829, 29 U.S.C. § 1001 *et seq.* Our holding intimates no view concerning the application of community property principles to benefits payable under programs that possess *these distinctive characteristics.*

*Hisquierdo,* 439 U.S. at 590 n. 24, 99 S.Ct. at 813 n. 24 (emphasis supplied). Since Congress has not spoken to the particular subject before us here and since we perceive no federal interest in ERISA that would require nonrecognition of Wisconsin's property distribution law, we think the presumption that state domestic relations law is preserved is not rebutted.

We are in accord with the Second and Ninth Circuits in concluding that state domestic relations law survives sections 514 and 206 of ERISA. *See, e.g., AT & T v. Merry,* 592 F.2d 118 (2d Cir.1979) (alimony and support payments); *Operating Engineers' Local 428 Pension Trust Fund v. Zamborsky,* 650 F.2d 196 (9th Cir.1981) (spousal maintenance payments); *Carpenters Pension Trust v. Kronschnabel,* 632 F.2d 745 (9th Cir.1980) (division of community property), *cert. denied,* 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981).

We are also supported by the Supreme Court's dismissal, for want of a substantial federal question, of the appeal in *Carpenters Pension Trust Fund v. Campa,* 89 Cal. App.3d 113, 152 Cal.Rptr. 362 (1979), *appeal dismissed,* 444 U.S. 1028, 100 S.Ct. 696, 62 L.Ed.2d 664 (1980). The effect of such a dismissal is to leave the decision of the lower court undisturbed and "without doubt [to] reject the specific challenges presented in the statement of jurisdiction" *Mandel v. Bradley,* 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977). *See also* 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice And Procedure § 4014 at 638–39 (1977). In *Campa,* the state court held that ERISA did not preclude the states from dividing pension rights in marital dissolution proceedings. The questions presented to the Supreme Court in *Campa* were framed as follows:

1. Do the provisions of Title I of the Employee Retirement Income Security Act, commonly known as ERISA, supersede the provisions of the California community property law and implementing statutes and court rules insofar as they relate to an employee benefit plan covered by that Act?

2. Does a state court have jurisdiction to order the board of trustees of an employee pension benefit plan covered by ERISA to make benefit payments in violation of the provisions of the documents and instruments governing the plan?

Brief of Appellant at 7. Therefore under the doctrine set forth in *Mandel v. Bradley,* the dismissal for want of a substantial federal question serves as a decision on the merits that the preemption section (section 514) of ERISA does not override California community property law. Although the appellants in *Campa* did not cite section 206 (non-alienation) in their statement of jurisdiction, the question of the validity of a domestic relations exception in ERISA implicates section 206 as much as section 514.

Appellant argues that even if a domestic relations exception to ERISA provisions has been fashioned by the courts, the instant case falls outside that exception because the Wisconsin divorce decree ordered property division rather than maintenance or child support, Wisconsin is not a community property state (like the other states where

property allocation has been involved), and the Fund in the instant case is not in "pay status."

First, we do not believe that the Wisconsin court order in the present case should be held to be preempted because property division, and not spousal maintenance or child support, is the issue. Division of property upon divorce (whether based on community property concepts or otherwise) is no less within the state's domestic relations purview than spousal maintenance or child support, and we see no persuasive basis to distinguish the case before us on the grounds that property division rather than maintenance or support is involved. It may be true, as appellant urges, that alimony and support obligations are ostensibly based on expected income and expenses and are subject to adjustment for change in circumstances. But we think payments that are in the strictest sense for family support and those that represent a division of property are economically so intertwined that for present purposes a distinction between them is unwarranted. *See Dixon v. Dixon,* 107 Wis.2d 492, 319 N.W.2d 846, 854 (1982) ("Under the 1977 Divorce Reform Act the court's award of maintenance, property division, attorney fees and children's medical expenses are interrelated and interdependent."). Nor does the policy of protecting workers and their dependents from the claims of non-family creditors support such a distinction. As a matter of practical administration, we believe it would be undesirable to make unnecessary distinctions among court-ordered payments of money and distributions of property clearly incident to a dissolution of marriage. A practical definition of the domestic relations exception should be sustained even in the face of a general need to give ample scope to ERISA preemption and to ERISA's ban on assignment and alienation.

Second, although the appellant is, of course, correct that Wisconsin is not a community property state, the fact that the property division cases upholding state law in the face of ERISA are community property cases is not controlling. Wisconsin law does not recognize community property but it does provide for equitable distribution of property upon divorce. Distribution of property upon divorce is governed by section 767.255 of the Wisconsin Family Code. That statute provides that, after certain statutory exceptions, "*[t]he court shall presume that all other property is to be divided equally between the parties ....*" (Emphasis supplied). The court may, however, alter such a distribution without regard to marital misconduct after considering certain criteria. WIS.STAT.ANN. § 767.255 (West 1981).

The effect of the Wisconsin statute is that upon divorce, all non-excepted property is, at least initially, presumptively subject to equal distribution. The rationale underlying this scheme of distribution is that, since both spouses contributed to the marriage and the property associated with it, both are entitled to an equal share of the property upon divorce. This rationale is strikingly similar to the "contribution to the community" theory that informs full-blown community property concepts in those states which follow that tradition. *See Operating Engineers' Local 428 Pension Trust Fund v. Zamborsky,* 650 F.2d 196 (9th Cir. 1981); *Carpenters Pension Trust Fund v. Kronschnabel,* 460 F.Supp. 978 (C.D.Cal. 1978), *aff'd,* 632 F.2d 745 (9th Cir.1980), *cert. denied,* 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981). Indeed, "the mutuality of enterprise" concept is a key factor underlying Wisconsin's requirement of equitable distribution of property. *See, e.g., Leighton v. Leighton,* 81 Wis.2d 620, 627, 261 N.W.2d 457 (1977). With respect in particular to recognizing the rights of the non-employee spouse in the pension plan of the employee spouse, "Wisconsin ... is in the forefront of common-law-property states recognizing the rights of the non-employee spouse." *Bloomer v. Bloomer,* 84 Wis.2d 124, 267 N.W.2d 235, 238 (1978). We think, therefore, that the conceptual differences between the division of what is technically community property and the division of property in Wisconsin after divorce are not so great as to warrant different conclusions about the relationship of state law to

ERISA in Wisconsin as opposed to community property states.

Third, the appellant argues that we should not follow prior cases upholding the domestic relations exception because in those cases the plan was in pay status and here it is not. This argument is not persuasive. We note at the outset that we need not even decide the question because it was established at oral argument that the plan before us is *now* in pay status. Were we to address this point, however, we would find that the prerequisite to upholding the domestic relations exception is not strictly that the pension fund be in pay status (*i.e.,* actually paying out benefits). Rather, the distinction is properly whether the beneficiary has a *current right* to the proceeds of the plan. In the case presently before us, the appellant had only to sign a withdrawal application directed to the fund in order to receive the proceeds of the plan. Although appellant cites *Monsanto Co. v. Ford,* 534 F.Supp. 51 (E.D.Mo.1981), in support of its position that the domestic relations exception does not apply if the fund is not in pay status, that case itself defines "pay status" as "currently due and payable to the employee." *Id.* at 53. The plan involved in the case now before us is clearly distinguishable from the *Monsanto* plan, which provided that the employee could receive nothing prior to age sixty-five. *Id.* By contrast, the plan involved here will pay proceeds to the appellant simply upon his signing a withdrawal application.

The judgment of the district court is therefore

AFFIRMED.