**The INTER–LOCAL PENSION FUND OF the GRAPHIC COMMUNICATIONS INTERNATIONAL UNION, et al., Plaintiffs,**

**v.**

**GILL, et al., Defendants.**

**No. 88 C 0660.**

United States District Court, N.D. Illinois, E.D.

Aug. 22, 1989.

Eugene Cotton, Thomas D. Allison, Michael H. Slutsky, George W. Terrell, Jr., Cotton, Watt, Jones & King, Chicago, Ill., for plaintiffs.

Joseph M. Burns, Thomas J. Esler, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiffs, the Inter–Local Pension Fund of the Graphic Communication International Union ("the Fund") and its trustees, filed a complaint against two participants in the Fund and their ex-spouses, seeking a declaratory judgment and other equitable relief that the Fund is not required to comply with state court orders directing it to pay the ex-spouses a portion of their former husbands' retirement monies under the Employment Retirement Income Security Act of 1974 ("ERISA"). Presently, plaintiffs move for summary judgment against defendant June Gill ("Gill"), one of the ex-spouses.[1] For the reasons stated in this memorandum opinion and order, the plaintiffs' motion for summary judgment is granted.

## I. FACTUAL BACKGROUND [2]

Established in 1950, the Fund is a trust forming part of a plan for the payment of retirement and other benefits funded only by contributions from employees. Employers do not contribute to the Fund and have no participation in its establishment or administration. The Fund is exempt from taxation under section 501(c)(18) of the Internal Revenue Code, 26 U.S.C. § 501(c)(18).

The provisions of the Trust Indenture govern the operations of the Fund. Section 12 of Article V of the Fund's Trust Indenture prohibits the assignment or transfer of any pension or other benefit.[3]

Defendant Thomas Gill is a participant in the Fund. On December 20, 1985, Judge Leander J. Foley, Jr. of the Family Court branch of the Circuit Court of Milwaukee County, Wisconsin, entered an order for assignment of interest in retirement plan in the matter of *Gill v. Gill*, case number 670–548. It is undisputed that this order is a qualified domestic relations order ("QDRO") as that term is defined in section 206(d)(3) of Erisa, 29 U.S.C. § 1056(d)(3).[4] The order directs the Fund to pay fifty percent of Thomas Gill's death benefits and monthly pension benefits to June Gill, commencing on or after December 29, 1988.

The Fund was notified of the entry of the order and was requested to make payments of benefits in accordance with the order. The plaintiffs then brought this suit in Federal District Court.

## II. ANALYSIS

In their motion for summary judgment, plaintiffs argue that the Fund is not required to comply with the state court domestic relations order because the order was issued in reliance on section 206(d)(3) of ERISA (the QDRO provision) which expressly does not apply to the Fund. Plaintiffs fear that payment of a pension benefit to Gill pursuant to the state court order would violate the anti-alienation provision of the Fund's Trust Indenture, Article V, Section 12 as well as constitute a breach of their fiduciary duty under section

---

1. Service has been effected against both of the ex-spouses and one of the participants: June M. Gill (now known as June Horn), Gail Shanto, and Thomas L. Gill. An appearance was filed only on behalf of June M. Gill. Plaintiffs have not sought a default judgment against the other defendants.

2. The facts set forth in this memorandum opinion and order pertain only to June Gill and her ex-husband.

3. Section 12 of Article V of the Trust Indenture of the Inter–Local Pension Fund provides:

   No pension or other benefit shall be subject to any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, and any attempt so to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge the same shall be void; nor shall any such benefit be in any manner liable for or subject to the debts, contracts, liabilities, engagements or torts of the person entitled to such benefit.

4. *See, infra,* note 6.

404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1).[5] Gill argues in response that the Fund's distribution of pension benefits is sanctioned not only by the QDRO provision of ERISA, but is also contemplated by the terms of the Fund's Trust Indenture.

Section 206(d)(1) of ERISA expressly prohibits assignment and alienation of plan benefits:

> Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated. 29 U.S.C. § 1056(d)(1).

In 1984, section 206(d) was amended to include section 206(d)(3), exempting qualified domestic relations orders from the anti-alienation requirements of section 206(d)(1) of ERISA.[6] *See* 29 U.S.C. § 1056(d)(3).

Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). This preemption provision of ERISA, however, does not apply to "quali-

fied domestic relation orders (within the meaning of Section 206(d)(3)(B)(i))." 29 U.S.C. § 1144(b)(7).

Plaintiffs contend that the QDRO exceptions to the anti-alienation and preemption provisions of ERISA do not apply to the Fund in this case. Plaintiffs argue that the provisions relating to QDROs are found in section 206 which falls under Part 2 of Title I of ERISA. Section 201(3)(B) declares that Part 2 of Title I (sections 201 through 211) of ERISA does not apply to a trust described in section 501(c)(18) of the Tax Code.[7] Plaintiffs also point to section 206(d)(3)(L) which expressly states that the QDRO provisions do not apply to any plan to which section 206(d)(1) does not apply.[8] Section 206(d)(1), in turn, does not apply to any plan not covered by Part 2 of Title I of ERISA. A trust described in section 501(c)(18) of the Internal Revenue Code is expressly excluded from coverage of Part 2 of Title I of ERISA.[9] Because the Fund in this case is a section 501(c)(18) trust, plaintiffs contend that the QDRO provisions are not applicable.

---

**5.** ERISA section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1), provides in pertinent part:
> (a)(1) Subject to section 403(c) and (d), 4042, and 4044, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title (title I) or Title IV.

**6.** ERISA section 206(d), 29 U.S.C. § 1056(d), states in part:
> (d)(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

> (3)(A) Paragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.
> (B) For purposes of this paragraph—
> (1) the term "qualified domestic relations order"—(which meets specified criteria set forth in the remainder of the section, which are not relevant to this motion.)
> (L) This paragraph shall not apply to any plan to which paragraph (1) does not apply.

**7.** ERISA section 201, 29 U.S.C. § 1051, provides:
> PART 2—PARTICIPATION AND VESTING COVERAGE
> This part shall apply to any employee benefit plan described in section 4(a) (and not exempted under section 4(b)) other than—
> (3)(B) a trust described in section 501(c)(18) of [the Internal Revenue] Code;

**8.** *See, supra,* note 6.

**9.** *See, supra,* note 7.

Defendant Gill asks this Court to reject the plaintiffs' "literalist approach" in favor of the broad, remedial goal of ERISA "to protect the rights of participants in employee benefit plans and *their beneficiaries*." *See* Defendant's Memorandum in Response to the Motion for Summary Judgment at 10, n. 12. In support of this argument, defendant Gill cites, in particular, *Sav. & Profit Sharing Fund of Sears Emp. v. Gago*, 717 F.2d 1038 (7th Cir.1983). ("state domestic relations law survives sections 514 [preemption] and 206 [anti-alienation] of ERISA.") However, *Gago*, decided prior to the 1984 amendment to ERISA, does not deal with a trust, as in this case, which is not subject to Part 2 of Title I of ERISA.

■ We find that the sections 201(3)(B) and 206(d)(3)(L) are clear and unambiguous that section 501(c)(18) trusts are excluded from coverage of any provision of Part 2 of Title I of ERISA. Because the Fund is a section 501(c)(18) trust, it is explicity not required to meet any provision of Part 2 of Title I of ERISA, including the anti-alienation provisions and the QDRO exceptions therein. Nor does the provision of section 514(b)(7) in ERISA saving QDRO's from preemption under section 514(a) of ERISA apply to the Fund.

Plaintiffs argue that compliance with the *Gill* order would violate Section 12 of Article V of the Trust Indenture and subject them to charges of breach of their ficuciary duties in violation of section 404(a)(1) of ERISA. Section 12 of Article V of the Trust Indenture contains an anti-alienation provision. Section 404(a)(1) of ERISA imposes upon the trustees fiduciary duties to administer the Plan in accordance with the documents and instruments governing the Plan, including Section 12 of Article V of the Trust Indenture.[10] 29 U.S.C. § 1104(a)(1).

Defendant Gill argues in response that since the language of the Trust Indenture's anti-alienation provision parallels the anti-alienation provision in section 206(d)(1) of ERISA, the QDRO provision found in ERISA must be imposed on the Trust Indenture. Defendant's argument is based on the premise that where a statute and a contract conflict, the statute controls. *See* Defendant's Memorandum in Response to the Motion for Summary Judgment at 12, n. 13.

Here, the Trust Indenture does not conflict with the ERISA statute. Because the Fund is not subject to Part 2 of Title I of ERISA, it is not required to meet the anti-alienation provisions or QDRO provisions. In this case, however, the Trust Indenture does contain an anti-alienation provision. Since the *Gill* order is preempted by virtue of section 514(a) of ERISA, the trustees are required by the fiduciary duty provisions of Part 4 of Title I of ERISA to uphold the terms of the Plan.[11] Thus, the Trust Indenture need not be consistent with the QDRO provisions of ERISA where those provisions do not apply.

Defendant Gill also argues that a decision that the Fund is not required to honor the *Gill* order would run counter to the anti-injunction provisions of 28 U.S.C. § 2283. That provision provides:

A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly au-

---

10. ERISA section 404(a), 29 U.S.C. § 1104(a), states:

(a)(1) Subject to sections 403(c) and (d), 4042, and 4044, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
(A) for the exclusive purpose of:
(i) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capaci-

ty and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title [title I] or Title IV.

11. *See, supra,* note 10.

thorized by Act of Congress, or where necessary in aid of the jurisdiction, or to protect or effectuate its judgment. 28 U.S.C. § 2283.

Here, plaintiffs do not seek an injunction to stay proceedings in state court. Rather, plaintiffs seek to enjoin the defendant from enforcing the *Gill* order. Thus, section 2283 does not apply to this case.

Last, defendant Gill argues that the Summary Plan Description issued by the plaintiffs in this case fails to provide notice that a QDRO will not be binding. Section 102(a)(1) of ERISA provides that Summary Plan Description shall contain a description of the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(a)(2), (b). Although the Summary Plan Description does not mention that the Fund will not honor a QDRO, plaintiffs argue that no violation of section 102 of ERISA occurred. Even if there was a technical violation of section 102, plaintiffs contend that Gill has no private right of action.

■ We do not address this issue since we find that the Fund adequately put the defendant on notice of the problem with recognizing QDROs. The record reveals that when the *Gill* order was received by the plaintiffs, they informed the Gills that they believed the trust was not covered by the QDRO provisions of ERISA and suggested alternative methods of dividing marital property which do not involve an attempted assignment of the participant's benefits to the defendant. *See* Affidavit of Michael Slutsky, exhibit "B". Defendant Gill has not offered any evidence to the contrary. Although the defendant Gill did not receive notice until after the domestic relations order was issued, she had ample opportunity to modify the order, thereby availing herself of alternative means of securing equivalent marital assets. Thus, defendant Gill received adequate notice that the Fund would not honor a QDRO.

## CONCLUSION

For the reasons stated above, this court declares that the Fund is not required to comply with the state court order directing it to pay defendant Gill a portion of her husband's retirement monies under ERISA. Thus, plaintiffs' motion for summary judgment is granted.